## The "Edith."

1. Under the maritime law, there is no lien upon a vessel for materials furnished and work done in repairing her at her home port.
2. A creditor, claiming the benefit of the provisions of the statute of New York, passed April 24, 1862, which purport to give such a lien, must, whether they be invalid or not, — a point which the court deems it unnecessary in this case to decide, — take it subject to all the conditions which they impose; and he loses it if it be not enforced within the time prescribed. Where a

seizure has been seasonably made, a bond in conformity to them, when executed and delivered to him by the owner, is a substitute for the lien, and works a discharge of the vessel.

8. The District Court can marshal the fund in its registry only between lien-holders and owners.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

In July, 1870, Buckman & Co., having done work and furnished materials amounting to $3,597.37 in repairing the "Edith," while she was lying in navigable waters in her home port of New York, claimed a lien on the ship for materials and repairs, under an act of the State of New York, entitled "An Act to provide for the collection of demands against ships and vessels," passed April 24, 1862. Acts of 1862, p. 456. The requisite notice was filed the twenty-seventh day of July, 1870, a few days after the vessel had left that port. Some time after her return, the precise period not appearing, proceedings were instituted by the firm, and an attachment was issued to the sheriff of the city and county of New York, who, after seizing her, discharged her on a satisfactory bond for the claim having been given on behalf of the owner. On the first day of April, 1871, she was libelled in the District Court of the United States, sitting in admiralty, and sold under a decree rendered on the 8th of the following month. After satisfying the decree and subsequent costs, there remained $31,176.82 in the registry of the court. On the 17th of the latter month, the firm filed their petition in that court, praying that so much of the fund as was necessary be applied to the payment of the amount so due them, which they claimed was, at the time it accrued, a lien on the "Edith," she being a domestic vessel belonging to the port of New York. At the time of filing the petition, a suit by the firm on the bond, which had been given to release her from the attachment, was pending in the State court.

The petition was resisted by Sedgwick, the assignee in bankruptcy of the owner of the "Edith," and by Tyler. To the latter more than the amount of the fund was then due from the owner, who had executed a mortgage therefor on three-fourths of the vessel, Jan. 11, 1870. The instrument was recorded the same day in the New York custom-house, and

a copy of it filed in the office of the register of the city and county of New York. There was also a prior mortgage on one-half of the vessel.

The District Court decided that Buckman & Co. had not a lien on the ship, nor any title to such fund as between them and the assignee in bankruptcy and the mortgagees.

The petition of Buckman & Co. was dismissed; and they appealed to the Circuit Court of the United States for that district, where a decree of affirmance was passed. They then appealed to this court.

*Mr. F. A. Wilcox* for the appellants.

*Mr. E. P. Wheeler,* contra.

MR. JUSTICE STRONG delivered the opinion of the court.

Assuming that, by virtue of the provisions of the statute of New York, of April 24, 1862, 4 Gen. Stat. 632, the appellants had a lien upon the ship for the repairs made and materials furnished by them, it is a vital question whether that lien remained in existence when the ship was sold on the eighth day of May, 1871. If it had expired, or if it had been discharged before that day, it is useless to examine the other questions raised in the case; for, however they might be determined, the decree made in the court below must necessarily be affirmed.

The repairs having been made upon a domestic vessel in her home port, there was no lien for them by the maritime law, and, therefore, whatever right the appellants had to a lien is that which was given to them by the laws of the State. The statute undoubtedly gives a lien, but not one of unlimited duration. The first section declares that debts contracted for work done or materials furnished in the State, for repairing sea-going or ocean-bound vessels, shall be a lien upon such vessels, and be preferred to all other liens thereon, except mariners' wages. But the second section declares that "such debt shall cease to be a lien at the expiration of six months after the said debt was contracted, unless at the time when said six months shall expire such ship or vessel shall be absent from the port at which such debt was contracted, in which case the said lien shall continue until the expiration of ten days after such ship or vessel shall next return to said port.

The repairs in this case were made upon the ship in the month of July, 1870, and on or before the 22d, for the ship cleared on that day, and sailed from the port a day or two afterwards. The lien, therefore, expired in January, 1871, unless the ship was then absent from the port of New York. If she was then absent, the lien expired at the end of ten days after her next return. It does not appear in the record exactly at what time she did return; but, in the petition of the appellants for an appeal to this court, it is averred that she was libelled in the southern district of New York, at the suit of another party, on the 1st of April, 1871, was duly attached, and was sold by virtue of a decree obtained in that case. It is the proceeds of that sale, made May 8, 1871, which are now in the registry of the District Court, and the petition of the appellants for payment out of the proceeds was not presented until May 17. How, then, can it be maintained that the statutory lien for the debt had not expired ? It is argued the presumption is that the ten days next after the return of the ship had not elapsed when the appellants filed their petition. Were it possible that any such presumption could be accepted, it would be a presumption of fact, and there is quite enough in the case to overcome it. The ship was libelled in admiralty, as we have noticed, on the 1st of April, 1871. She was duly seized, a decree against her was made, and under it she was sold on the 8th of May. It is hardly possible that the seizure, decree, and sale could have been made within ten days. It could not have been, if in accordance with the usual course of admiralty practice. As the seizure was made in the southern district of New York, it would be an inadmissible presumption that the ship had not returned to the port of New York more than ten days prior to the sale, or certainly more than ten days prior to the 17th of May, when the appellants filed their petition. And this is not all. The evidence shows that, after the return of the ship, the appellants caused an attachment to be issued out of the Supreme Court of New York, in virtue of which the sheriff of the city and county seized the ship, and a satisfactory bond was given, as allowed by the statute of the State, and the ship was discharged. This must have been before the marshal had taken the ship into custody under the process of the Admiralty Court.

The sheriff could not have attached her after the marshal's seizure. It is reasonably clear, therefore, that she had returned to the port of New York more than ten days before she was sold. This is the result of affirmative proof.

But, were there no such proof, the burden of showing the contrary would rest upon the appellants. Six months having expired after the repairs were made to the ship, they had no lien, unless the ship was absent from the port at the expiration of that period, and then only during ten days after her next return. The lien during those ten days was a special privilege given to them by statute, — an exceptional right. Hence, it was incumbent upon them to show that such a right existed, and, by proof, to bring themselves within the exception. This is always the rule when a party claims a peculiar right given by a statute, — a right not common to all, and which is given only when a prescribed state of facts shall exist. Such proof the appellants have not adduced, and, therefore, they have failed to show that their statutory lien had not expired before they presented their petition for payment, and even before the ship was sold.

And were this not so, still, on the facts of the case as exhibited by the record, it must be held that the lien was discharged.

It is almost superfluous to remark, that whatever lien the appellants ever had, they held it subject to all the provisions of the statute which gave it to them. They sued out an attachment against the ship, after her return to New York, for the recovery of the claim they now set up. The ship was seized by the sheriff of the city and county, and, a satisfactory bond having been given according to the provisions of the lien law, the ship was discharged from the custody of the sheriff, and from the attachment. Upon that bond a suit has been brought, which is now pending. The effect of such an attachment and bond is plainly declared by the statute. The twelfth section enacts, that, " upon such bond being executed and delivered to such attaching creditor or his attorney, . . . no further proceedings against the said vessel so seized shall be had under the provisions of this title, founded upon any demand secured by such bond." The bond is thus made a substitute for the lien, and its purpose and effect are to work a discharge of the vessel. It matters not that the statutory provisions for enforc-

ing the lien have been adjudged invalid, because beyond the power of the State legislature. If they are invalid, it may be doubted whether all the provisions purporting to give a lien are not also invalid, because inseparable from the prescribed means of enforcing it. But without deciding that, we may remark, that clearly the State had power to enact that the lien it created should terminate, if a bond was given in place of the vessel; and the creditor claiming the lien must take it, subject to the conditions imposed.

It need hardly be added, that though a proceeding *in rem* and a petition for payment of a claim out of proceeds of a sale remaining in the registry are distinct things, — the former proceeding on the ground of a lien, — yet no one except an owner is entitled to payment out of the registry, unless he has a lien upon the fund therein. The court can marshal the fund only between lien-holders and owners.          *Decree affirmed.*