THE WYOMING. THE DACOTAH. *In re* JACKSON. *In re* LEWIS.

(*District Court, E. D. Missouri, E. D.* February 19, 1889.)

**1. MARITIME LIENS—DISTRIBUTION OF SURPLUS—NON-LIEN CLAIMANTS.**

.The surplus after payment of maritime lien claims cannot be awarded as against mortgagees to a general creditor, who has no lien recognizable in any court.

**2. SAME—PARTNERSHIP—FIRM CREDITORS—DISSOLUTION BEFORE SEIZURE.**

Neither are such creditors entitled to the surplus because the mortgagees were members of the firm which owned the vessel when the debts were contracted, and the other member insisted on payment out of the proceeds, where the latter became sole owner, and the firm was dissolved before seizure.

In Admiralty. Petitions by John Jackson and T. T. Lewis against the surplus and remnants. For former opinions, see 35 Fed. Rep. 548, 36 Fed. Rep. 493.

*Campbell & Ryan,* for petitioners.

*C. G. B. Drummond* and *James P. Dawson,* for mortgagees.

THAYER, J. The intervening libels filed by the petitioners against the steam-boats Dacotah and Wyoming, were dismissed for reasons heretofore stated. 36 Fed. Rep. 494. A surplus remains in the registry after the payment of all admiralty liens. Petitioners have filed claims for the surplus, and it becomes necessary to determine the question that was left undecided on the former hearing, whether they are entitled to the surplus in preference to the mortgagees. The facts are that petitioners advanced money to "Hunter Ben Jenkins, Manager of the Steamers Dacotah and Wyoming." The steamers belonged at the time to Jenkins, and to the mortgagees Sallie B. and Sandford B. Coulson. Jenkins had control of them for the benefit of himself and his co-owners, and borrowed and used the money in question for his own and their benefit. Subsequently Jenkins purchased the interest of the Coulsons in the steamers, and to secure the purchase money agreed to be paid therefor executed the mortgages under which the Coulsons, as mortgagees, now claim the surplus in the registry. It must be confessed that the facts developed predispose the court to award the money to the petitioners, if such a decree can be justified on legal grounds. When a surplus remains in the registry after all maritime lien claims are discharged, no disposition can be made of it without determining who is entitled to it. In determining that question, courts of admiralty (as is often said) act on equitable principles. By that expression no more is meant than that they will recognize the rights of those who had at the time of the seizure a vested interest in the *res*, such as a legal or equitable lien other than of a maritime nature, and that they will determine as between such lien claimants, and as between them and the owner, who has the superior right to the surplus, and in what order it ought to be distributed. *The Lottawanna,* 21 Wall. 582, 20 Wall. 223; *The Edith,* 94 U. S. 523. A mere general creditor of the owner has no lien, legal

or equitable, on his debtor's property, and has not therefore such a vested interest in the *res* as an admiralty court can recognize. They are not courts of bankruptcy or of insolvency, nor are they invested with any jurisdiction to distribute the owner's property among his creditors, as was said in *The Lottawanna Case*, 20 Wall. 221. The cases cited for petitioners establish no other doctrine than that above stated, that admiralty courts, after admiralty liens are paid, will entertain a petition against remnants and surplus, when the petitioner shows that he has a lien on the *res*, acquired by contract with the owner, or under a local statute; and that in such cases questions of priority, as between such lien claimants, will be adjudicated, if necessary, although the liens are not maritime. *The Guiding Star*, 18 Fed. Rep. 263; *The E. V. Mundy*, 22 Fed. Rep. 173, 174; *The Wexford*, 7 Fed. Rep. 671; *The O. A. Carrigan*, Id. 507. I am informed that my predecessor, Judge TREAT, has on several occasions, when an admiralty claim was adjudged stale, nevertheless allowed the same against remnants and surplus. Such action, in effect, amounted to no more than giving other admiralty claims that were considered more meritorious, a preference over the stale demand. Neither the practice last referred to, nor the case cited for petitioners, establishes a rule that will warrant the court in awarding the fund in controversy to petitioners, rather than to the mortgagees. The former, as has been heretofore held, had no maritime lien on the steamers Dacotah and Wyoming at the time of the seizure. Neither did they have a lien which a court of law or equity would recognize or enforce as against the *res*. They were merely general creditors of the owners of the steam-boats for money loaned. The fact that the mortgagees, under the testimo··· are clearly liable to the petitioners at law for the money so loaned, the court no right to appropriate the fund now in the registry to the payment of such debt, in opposition to the wishes of the mortgagees. I was at first somewhat inclined to the view that petitioners' claims might be allowed on the ground that the mortgagees were members of the firm to which the money was loaned, and that petitioners had an equitable right to have the debt paid out of the proceeds of the steam-boats, because they were firm property, and because Jenkins, who was one of the firm, insisted on such payment. The objection to that view is that the steam-boats ceased to be firm property when the mortgagees sold their interest to Jenkins, and such sale took place some time prior to the seizure. After such sale they were the sole property of Jenkins, and no longer firm assets. *Dimon* v. *Hazard*, 32 N. Y. 65; *Howe* v. *Lawrence*, 9 Cush. 555; *Kelly* v. *Scott*, 49 N. Y. 598. Petitioners' claims derive no support, therefore, from the law applicable to the administration of partnership estates, as the fund in court is not partnership assets. The petitions must accordingly be dismissed, and the fund awarded to the mortgagees.