## THE JOHN S. PARSONS.

(District Court, N. D. New York. October 10, 1901.)

### No. 5.

1. MARITIME LIENS—REPAIRS AND SUPPLIES—HOME PORTS.

A lien does not attach to a vessel for repairs and necessaries furnished in a port of the same state as her home port, which can be enforced in a court of admiralty, unless such lien is given by a state statute, and the requirements of such statute have been complied with.

2. SAME—PURCHASER OF VESSEL—VERBAL RECOGNITION OF LIENS.

Promises made by the purchaser of a vessel to pay claims for repairs and supplies furnished such vessel before his purchase, and statements recognizing liens therefor, will not bind either him or the vessel, where they were made upon representations by the claimants that they had valid liens, and in the belief that such representations were true, when in fact no such liens existed.

In Admiralty. Suit to establish and enforce maritime liens.

P. W. Cullinan and Udell Bartlett, for libelant.

John Carlisle, for claimant.

George N. Burt, for interveners.

COXE, District Judge. John S. Parsons filed a libel in rem October 20, 1900, for materials furnished in constructing and reconstructing the steam vessel John S. Parsons and for supplies furnished at various times between June, 1891, and June, 1897. Patrick Flanagan, the Oswego Tugmen's Association and George Goble intervened, asserting claims against the vessel, respectively, for groceries, towing and repairs furnished prior to August, 1897. Three other small claims for supplies have been presented. The home port of the vessel has at all times been Chaumont, N. Y. The materials were furnished and the repairs were made at Oswego, N. Y., about 50 miles from Chaumont. The claimant, D. C. Wheeler, is the present owner of the vessel, having purchased her in September, 1899. The indebtedness in controversy was contracted by Frank Phelps, the previous owner. Both Wheeler and Phelps reside at Chaumont. No proceedings were ever taken to establish a lien under the laws of New

York and it is not contended that such a lien existed when the libel was filed or when the bill of sale was given to Wheeler. 3 Rev. St. N. Y. (7th Ed.) pp. 2404–2410; Laws 1886, p. 170; 3 Gen. Laws N. Y. (Birdseye's Rev. St., 2d Ed.) p. 2806. A lien does not attach by the general maritime law for repairs and necessaries furnished a vessel in the port or state to which she belongs. The theory upon which material men are refused a lien upon a vessel in her home port is that the credit may well be supposed to have been given to the owner and not to the vessel. Accordingly, there is no lien which can be enforced in rem in admiralty, unless such a lien is recognized by the local laws of the state. No principles of admiralty law are more firmly established than these. The General Smith, 4 Wheat. 438, 4 L. Ed. 609; The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; The Edith, 94 U. S. 520, 24 L. Ed. 167; Davidson v. Baldwin, 24 C. C. A. 453, 79 Fed. 95; Stephenson v. The Francis (D. C.) 21 Fed. 715. When the municipal law of the state where the materials are furnished so provides, a lien can be created, but only by a compliance with the provisions of the state statutes. Such a lien can only be enforced in the admiralty courts. The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The Edith, 94 U. S. 518, 24 L. Ed. 167; The Guiding Star (C. C.) 18 Fed. 263; Vose v. Cockcroft, 44 N. Y. 415; The Arctic (D. C.) 22 Fed. 126; The John Farron, 14 Blatchf. 24, Fed. Cas. No. 7,341. It being manifest that there was no lien, maritime or statutory, against the vessel, it is obvious that nothing short of the most clear and positive evidence will suffice to establish the liability of the claimant.

That a sane man would voluntarily, and without consideration, agree to pay the debts of another amounting to over $1,000 can hardly be presumed. It was conceded at the argument by counsel representing the libelant that there was grave doubt whether the testimony established a promise on the part of the claimant which could be enforced in a court of common law, and it is difficult to perceive how the libelant's position is any stronger in a court of admiralty. Assuming that a purchaser of a vessel may, by parol, create a lien upon the vessel in favor of the unsecured creditors of the former owner, the testimony here falls far short of proving such an agreement. That Phelps told the libelant before the materials were furnished that his claim would be a lien against the boat and that he subsequently repeated the statement cannot be denied. But what Phelps said was true. The claim was a lien against the boat, but it was not a perpetual lien, and in order to make it effectual the libelant was required to comply with the simple requirements of the state law. Had he done so there would have been no misunderstanding and no litigation. All of the libelant's difficulties may be traced to this neglect. The libelant never saw the claimant until September, 1899. This was after the latter had purchased the boat and over two years after the last materials had been furnished to Phelps. The court is convinced that whatever statements were thereafter made by the claimant, of which it is sought to predicate an agreement to pay the debts of Phelps and to recognize them as liens upon the

boat, were made under an entire misapprehension of the facts and the law. The claimant is a farmer and a merchant in a small country village. He evidently knew nothing of the law maritime and little of the lien law of the state. He testifies that the libelant told him that his claim was filed in the office at Cape Vincent and the lawyer who was consulted about the transfer informed him that if claims were filed "they would follow the boat." That he believed for a long time that there were valid liens against the vessel and that all his statements thereafter were made in accordance with this belief seems fully established by the testimony and the presumptions arising therefrom. As soon as he ascertained what the law was he promptly repudiated all obligation to pay the debts. Had he known the law earlier it is inconceivable that he would have entertained the idea of liability for a moment. The libelant and Phelps repeatedly informed him that the claims were liens upon the boat after the purchase by him and he relied upon their statements and acted accordingly, but his actions were all based upon this erroneous information. The superstructure cannot stand after the foundation has been destroyed. The promise, if one existed, cannot be enforced when the consideration which might make it valid is shown to have had no legal existence. In short, no lien, maritime or statutory, existed, and the testimony fails to establish any liability on the part of the claimant; certainly not a liability in rem.

The libel is dismissed with costs.