## THE WABASH.

### Petition of GRAHAM.

(District Court, D. Connecticut. June 21, 1923.)

### No. 2373.

1. **Admiralty ☞101—One without lien not entitled to make claim against proceeds in registry of court.**

   A party must have a maritime lien in order to be entitled to make claim against proceeds of sale of libeled vessel in the registry of the court, and in this connection admiralty rule 42 is a rule of procedure, and does not create a lien.

2. **Admiralty ☞1—Cannot retain jurisdiction to dispose of nonmaritime subjects.**

   A court of admiralty cannot retain jurisdiction to dispose of nonmaritime subjects, for the purpose of doing complete justice after the manner of courts of equity.

3. **Receivers ☞210—Receiver cannot enforce in admiralty court in another district claim of proceeds of sale of vessel under libel.**

   A receiver in one district, appointed by a court by virtue of its general power as a court of chancery, may not in another district enforce in admiralty a lien against a vessel sold under a libel, as there can be no difference whether a receiver has merely filed a petition in accordance with admiralty rules or whether he is suing to impound a fund.

In Admiralty. In the matter of the steamship Wabash. Petition by James G. Graham, as receiver in equity of the French-American Line, Inc., for proceeds arising from the sale of the Wabash. Petition dismissed.

See, also, 279 Fed. 921.

G. Noyes Slayton and Crowell & Rouse, all of New York City, for libelants.

Lord, Day & Lord, of New York City, for Credit Foncier, etc.

THOMAS, District Judge. On September 14, 1921, the steamship Wabash, formerly belonging to the French-American Line, Inc., was sold by this court on the libel of T. C. Hurst & Son, and the proceeds, amounting to $33,100, were deposited in the registry of this court. Three other libels were filed against this vessel prior to its sale. Subsequent to the sale, to wit, on May 25, 1922, James G. Graham, as receiver of the French-American Line, filed a petition asking for all the proceeds of the sale on account of a certain indebtedness alleged to have been incurred (1) for the benefit of the steamship Wabash; (2) for the benefit of other vessels of the French-American Line; and (3) for disbursements made by Frank S. Martin, the former receiver of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

French-American Line, from moneys received from the sale of the receiver's certificates issued under authorization of the District Court for the Southern District of New York, the court which appointed the receiver.

This petition alleges, in substance, that on October 14, 1920, Frank S. Martin was appointed receiver in equity of the French-American Line by the United States District Court for the Southern District of New York; that on October 6, 1921, James G. Graham, this petitioner, was appointed to succeed Martin; that the Wabash was included among the assets which came into the hands of the original receiver. It is also alleged that the Wabash, at the time Martin was appointed receiver, was anchored in the stream at Norfolk, Va., laden with a cargo of coal consigned to Constantinople, and that various libels had been filed against the vessel, so that she was prevented from sailing; that thereafter Martin, as receiver, caused the Wabash to be bunkered and supplied in order to carry the cargo, had the steamship released from the libels under which it was attached, and caused it to deliver the coal at Constantinople and return to New London, Conn., and after its return caused it to be laid up, repaired, preserved, and protected for the benefit of the creditors of the French-American Line.

The petition further alleges that in bunkering and supplying the Wabash, and in repairing, preserving, and protecting her, the receiver incurred certain obligations, which are detailed at length. The petition then sets forth the order of court in the Southern district appointing Martin, and the subsequent order appointing Graham, as receivers, and alleges that Martin, as receiver of the French-American Line, was authorized by the court to borrow on receiver's certificates $851,500, of which amount $60,000 were issued for and in behalf of the Wabash. The remainder of the petition alleges the necessity for the disbursements made and the bills incurred by the receiver and the reasons for not filing this petition before the sale of the Wabash.

T. C. Hurst & Sons, one of the libelants in the consolidated case against the Wabash, filed exceptions to this petition on the four grounds, as follows:

"(1) That the items referred to in article fifth of the petition, and set forth in detail in Schedule A of the petition, are alleged in article fifth of the petition to be unpaid obligations of the receiver, and not advances made by the receiver.

"(2) That none of the items set forth in Schedule A would constitute a lien against the steamship Wabash or her proceeds under any circumstances.

"(3) That in article seventh of the petition it is alleged that Frank S. Martin, as receiver of French-American Line, in pursuance of a court order, a copy of which is marked Schedule D, annexed to the petition, issued receiver's certificates of indebtedness as such receiver in the total sum of $821,-500, of which a certificate of the par value of $60,000 was issued and the proceeds thereof were used by Frank S. Martin, as receiver, for the benefit, preservation, and protection of the steamship Wabash in accordance with details set forth in Schedule G of the petition. The order (Schedule D) authorizing the issuance of said receiver's certificates, provides that 'wherever the moneys derived from the sale of the said certificates of indebtedness shall be shown to have been applied in the payment or discharge of any claim, the owner or holder of which would have been lawfully entitled to a lien, maritime or otherwise, against any of the properties of the said various companies therefor, had such claim not been paid, then the holder or owner of such

certificates or any of them shall be subrogated to all the rights of the party owning or holding said claim, prior to the discharge or payment thereof, as if said party had perfected his lien covering such claim.' The petition fails to allege that the receiver petitioner is the owner or holder of said certificate of $60,000, but shows on its face that the receiver petitioner is not the owner or holder of the said certificate of $60,000, and is therefore not entitled to any lien against the proceeds of the Wabash on account of the use or application of the proceeds of said certificate.

"(4) That the items set forth in Schedule A (unpaid indebtedness of the receiver) and in Schedule G (alleged disbursements for the benefit, preservation, and protection of the steamship Wabash) referred to in article eighth of the petition, even if they constituted liens against the steamship Wabash or her proceeds in court, do not constitute liens in favor of the receiver petitioner."

The exceptions conclude with a prayer that the petition be dismissed.

[1] The petitioner contends that it is not necessary that a party should have a maritime lien in order to be entitled to make claim against the proceeds in the registry of the court, and cites the forty-second admiralty rule in support of his contention; but I am persuaded that this rule is a rule of procedure only and does not create a lien, and that this court cannot award any of the proceeds of the sale to the petitioner unless the petitioner has a lien, for it has been frequently held that courts of admiralty can only marshal the proceeds of sale of a vessel between the lienors, maritime or otherwise, and the owners. In The Edith, 94 U. S. 518, 24 L. Ed. 167, repairs were made upon a domestic vessel in her home port, and there was no lien for them by the maritime law, but the supply man sought to obtain the surplus in the registry of the admiralty court after the satisfaction of all liens. Mr. Justice Strong said, on page 523:

"It need hardly be added that, though a proceeding in rem and a petition for payment of a claim out of proceeds of a sale remaining in the registry are distinct things—the former proceeding on the ground of a lien—yet no one except an owner is entitled to payment out of the registry, unless he has a lien upon the fund therein. The court can marshal the fund only between lienholders and owners."

[2] In the Ada, 250 Fed. 194, 162 C. C. A. 330, it was held that a court of admiralty cannot retain jurisdiction to dispose of nonmaritime subjects, for the purpose of doing complete justice after the manner of courts of equity. In considering the power of an admiralty court to marshal assets, Judge Ward, speaking for the Circuit Court of Appeals for the Second Circuit, said (250 Fed. 195, 162 C. C. A. 331):

"It [a court of admiralty] cannot, having obtained jurisdiction, dispose of nonmaritime subjects, for the purpose of doing complete justice, after the manner of courts of equity, nor can it distribute funds in its possession, as do courts of equity and bankruptcy, among all creditors, preferred and general. Its power to dispose of the proceeds of a vessel, though it extends to the payment of nonmaritime liens, after maritime liens have been satisfied, does not extent to claims in personam or of general creditors, except so far as to pay over any surplus to the owner."

In view of the holdings in The Edith (1876) 94 U. S. 518, 24 L. Ed. 167, The Lottawanna (1873) 20 Wall. 201, 221, 22 L. Ed. 259, The Ada (C. C. A. Second Circuit, 1918) 250 Fed. 194, 162 C. C. A. 330, and the statement in Benedict's Admiralty (4th Ed. 1901) § 506, it is

296 F.—36

perfectly obvious that the forty-second admiralty rule refers to a lien interest in the proceeds. In the second opinion in The Lottawanna (1874) 21 Wall. 558, 579, 22 L. Ed. 654, Mr. Justice Bradley stated at page 579:

"As to the recent change in the admiralty rule referred to, it is sufficient to say, that it was simply intended to remove all obstructions and embarrassments in the way of instituting proceedings in rem in all cases where liens exist by law, and not to create any new lien, which of course, this court could not do in any event, since a lien is a right of property, and not a mere matter of procedure."

Petitioner's memorandum neither directly nor indirectly claims that he has a lien. Under these circumstances this court has no alternative but to follow the long-standing rule of admiralty courts that the proceeds of sale will not be distributed to nonlien claimants.

[3] The exceptants contend, as another ground for dismissing the petition, that the petitioner cannot enforce, in this court, any lien against the property of the French-American Line of which he is receiver, and argues that a receiver appointed by a court of equity in one district, by virtue of its general powers as a court of chancery, may not sue in another district, unless he has title to the property of the party for whom he is appointed such receiver, and cites in support of this contention Great Western Mining Co. v. Harris, 198 U. S. 561, 25 Sup. Ct. 770, 49 L. Ed. 1163, and Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 Sup. Ct. 480, 67 L. Ed. 871, decided April 23, 1923. These cases support the claim. In the Harris Case the court quoted with approval the rule as stated in Booth v. Clark, 17 How. 322, 338 (15 L. Ed. 164), and said:

"While that case was decided in 1854, its authority has been frequently recognized in this court, and as late as Hale v. Allinson, 188 U. S. 56, it was said by Mr. Justice Peckham, who delivered the opinion of the court: 'We do not think anything has been said or decided in this court which destroys or limits the controlling authority of that case.' In that case the following language, as to a receiver's powers, from Booth v. Clark, supra, is quoted with approval: 'He has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek.'"

And on pages 576 and 577 of 198 U. S. (25 Sup. Ct. 775) Mr. Justice Day said:

"In the case now before us it does not appear that the receiver had any other title to the assets and property of the company than that derived from his official relation thereto as receiver under the order of the court. In such a case we think the doctrine of Booth v. Clark is fully applicable. It is doubtless because of the doctrine therein declared that the practice has become general in the courts of the United States, where the property of a corporation is situated in more than one jurisdiction, to appoint ancillary receivers of the property in such separate jurisdictions."

In the Lion Bonding Case, supra, just decided by the Supreme Court, the rule as stated in the Harris Case was reaffirmed and Justice Brandeis said:

"As Minnesota receivers merely, Hertz and Levin· had .no rights whatever in Nebraska. The general rule that a' receiver cannot sue in a foreign juris- diction, applied. Great Western Mining Co. v. Harris, 198 U. S. 561, 49 L. Ed. 1163, 25 Sup. Ct. Rep. 770. The express authorization (contained in the order of appointment) to apply for aid to other courts could not aid them in this respect. Sterrett v. Second National Bank, 248 U. S. 73, 63 L. Ed. 135, 39 Sup. Ct. Rep. 27."

It seems clear, then, that the claims of the exceptants are supported by authority. But the petitioner argues that the receiver is not suing here, within the rule to which reference is made that he may not sue in a foreign jurisdiction—that he has merely filed a petition in accordance with the admiralty rules to be allowed to participate in the distribution of the proceeds in the registry of this court. But there can be no dif- ference whether a receiver "has merely filed a petition in accordance with the admiralty rules," or whether he is merely suing to impound a fund as in Booth v. Clark, supra, for there the court said (17 How. 338, 339):

"But apart from the absence of any such case, we think that a receiver could not be admitted to the comity extended to judgment creditors, without an entire departure from chancery proceedings, as to the manner of his ap- pointment, the securities which are taken .from him for the performance of his duties, and the direction which the court has over him in the collection of the estate of the debtor, and the application and distribution of them. If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official ac- countability. All that could be done upon such an application from a re- ceiver, according to chancery practice, would be to transfer him from the locality of his appointment to that where he asks to be recognized for the execution of his trust in the last, under the coercive ability of that court, and that it would be difficult to do, where it may be asked to be done, without the court exercising its province to determine whether the suitor, or another person within its jurisdiction, was the proper person to act as receiver."

This case comes within the rule set forth and the reasoning in Booth v. Clark. Since the petitioner has no lien, maritime or otherwise, the petition must be dismissed; and it is so ordered.