George S. Fuller, of Boston, Mass. (Norman Bingham, Jr., and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., on the brief), for appellant.

William G. Thompson, of Boston, Mass. (George E. Mears, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

In 1921, the New England Oil Refining Company by its mortgage deed of trust conveyed to the First National Bank of Boston, as trustee, certain real estate situated in the cities of Fall River and New Bedford, to secure an issue of bonds to the amount of $5,000,000.

Under the mortgage deed the refining company agreed punctually to pay all taxes and other assessments on the mortgaged property. In 1923 there was assessed as of April 1st against the mortgaged premises by the cities of Fall River and New Bedford taxes to the amount of $131,040.03, which were due and payable on October 15th of the same year. At some time following the due date, presumably soon afterward, each city sent the usual notice of its intent to enforce its lien upon the property, though it does not appear that any further action was taken by either city to enforce its lien up to the time of the sale of the property and the payment of the taxes by the trustee.

· On the 9th day of October, 1928, the refining company being in financial difficulties, receivers were appointed of all its property.

In December, 1928, the trustee petitioned to intervene in the receivership proceedings, setting forth that there had been a default by the refining company of the covenants of its trust mortgage; that the taxes had not been paid, and asked that the receiver be ordered to pay the taxes from the general assets, or that the trustee be authorized to pay, and, upon payment, to become subrogated to the rights of the municipalities; that it be allowed to take possession of the property, and that it be authorized to sell the same under the power of sale contained in the trust mortgage for the purpose of foreclosure.

The court sustained the petition, but refused permission for the trustee to take possession, or to direct the receiver to pay the taxes from the general funds; but authorized the trustee to sell the mortgaged property for the sum of $2,150,000, if it were sold free of the tax liens, and if sold subject to the tax liens for that sum less the amount of the taxes and interest to the date of sale.

The court, in order to fully protect the rights of the parties, provided in its decree ordering the sale that, if the property were sold free of taxes, the trustee paying the taxes before the sale, any right the trustee might thereby have of subrogation to the rights of the cities to enforce their liens should be preserved and left to be determined later by the court.

On February 5, 1929, the mortgaged property was offered for sale and was bid in by a member of a "bondholders' protective committee" for the sum of $2,150,000, the trustee having previously borrowed the funds and paid the taxes. (We have omitted reference to an additional sum of $4,000 received, as it has no bearing on the issues in this case.) The member of the protective committee then completed a deal already arranged with the Shell Oil Company and resold the property to that company for the sum of $2,250,000, the additional sum of $100,000 over that paid to the trustee being retained by the protective committee for expenses incurred in connection with the foreclosure and sale of the property.

After the sale the trustee paid out of the sale proceeds the loan obtained for the discharge of the tax liens, and later presented a claim to the receivers for reimbursement

from the funds in their hands applicable to the claims of the general creditors, claiming that, having paid the taxes under the circumstances, the trustee was entitled to be subrogated to the rights of the cities to enforce their liens on any property of the refining company in the hands of the receiver. Where one of two parties has a lien on two funds, and the other on only one of them, a court of equity, under the doctrine of marshalling assets, will order the creditor having a lien on both funds to enforce it against the fund on which the other preferred creditor has no lien and, therefore, as between the trustee representing the bondholders and the cities, the taxes should be paid from the general funds in the hands of the receiver on which the city had a lien, but the trustee in behalf of the bondholders had none under the mortgage. Equitable Trust Co. v. Kelsey, 209 Mass. 416, 95 N. E. 850, Ann. Cas. 1912B, 750.

The court below stated in its opinion: "Clearly, too, the trustee as second lienor, and not as a volunteer, properly is subrogated to whatever rights the cities had in and to such property or the proceeds thereof. Furthermore, the cities had a statutory preference on their claim to payment out of the rest of the property in the hands of the receiver."

The court, however, denied the claim of the trustee and held that, even if the trustee were entitled to subrogation by reason of having paid the taxes, it was not entitled to have its claim paid out of the general assets to the detriment of the general creditors.

█ If the trustee under the circumstances were compelled to pay the taxes to preserve the property or effect the sale, and were not a mere volunteer in the premises, and were therefore subrogated to the rights of the cities as the court below held, we think the court erred in holding that the cities, as against the general creditors, were obliged to enforce their liens against the mortgaged property under the doctrine of marshaling assets. The error of the court also included a failure to recognize that, as between the cities and the bondholders or the trustee in their behalf, the trustee, before subrogation took place, could have compelled the cities to enforce their claim against the general assets of the taxpayer and not against the mortgaged property. When, therefore, the trustee, acting in behalf of the bondholders, became subrogated to the rights of the cities, the court in marshaling the assets could still compel the tax liens to be discharged from

assets on which the trustee as mortgagee had no lien as against the general creditors. Otherwise there would be no subrogation in the true sense of the term. Equitable Trust Co. v. Kelsey, supra; Merrill v. Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640.

[4] The error in the reasoning of the court also extended to holding that the trustee by paying the taxes only acquired a claim against the refining company for a breach of the mortgage covenant by the refining company to pay the taxes, and resulted in an unpreferred claim on which it must share in the proceeds of the receivership with other unsecured creditors. If it were subrogated at all, it was to the right of the cities to have the tax liens enforced either against the mortgaged premises or against the other assets of the company, and it did not thereby lose its right as the other lienor to compel the tax liens to be satisfied out of the general assets of the taxpayer.

██ Again it is urged and the court below also held that by reimbursing itself for the sums paid in the discharge of the tax liens out of the proceeds of the sale the trustee lost its right of subrogation, and the bondholders alone now have the right of subrogation. We cannot assent to this. A trustee under a trust mortgage acts for the bondholders. When it paid the taxes it paid them in behalf of its cestui. In the borrowing of the funds and in its reimbursement out of the proceeds of the sale, it was still acting in behalf of the bondholders. It was all one transaction, and in its trust capacity for and in behalf of its cestui, and for whom it is now acting in the same capacity in making the claim of subrogation. If the property had been conveyed with the covenant that it was free of the tax liens, and by arrangement with the purchaser the taxes were after the sale paid by the trustee from the proceeds of the sale, we think it could have made no difference, assuming the trustee was compelled to pay to protect its lien. The trustee could still have claimed subrogation in behalf of the bondholders.

█ We are unable to give the effect contended for by counsel to the stipulation by which the bondholders agreed only to prove such claims against the receiver as it might prove in bankruptcy. This was clearly entered into, according to the record, simply to avoid the secured creditors proving their entire indebtedness against the funds in the hands of the receiver and holding their security in addition. We think this stipulation was not intended by the parties to cover the rights ac-

quired by the trustees under its claim of subrogation through the discharge of the tax liens. The trustee, therefore, though acting in behalf of the bondholders in these proceedings, is not thereby estopped from insisting upon its right of subrogation and the marshaling of assets.

Whether the trustee in this case was under the necessity of paying the taxes to protect the rights of its cestui and was not a mere volunteer was a more doubtful proposition. The court below, however, held that the trustee was not a volunteer and was entitled to subrogation. While there were no special findings of fact by the court, it was stipulated by the parties that for the purpose of this appeal any statement of facts in the opinion should be taken as true and sufficiently supported by the evidence.

■ An unsecured creditor does not have equal standing with a secured creditor under the equitable doctrine of marshaling assets. 19 Em. & Eng. Ency. 1284; 18 R. C. L. 458; 38 C. J. 1379, 1380; Emmons v. Bradley, 56 Me. 333, 338; The Edith, 94 U. S. 518, 24 L. Ed. 167.

The decree of the District Court is reversed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.