## HIS MAJESTY'S GOVERNMENT FOR THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND v. COMPAGNIE GENERALE TRANSATLANTIQUE.

### No. 16113.

District Court, E. D. New York.

Aug. 27, 1941.

Cravath, De Gersdorff, Swaine & Wood and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City (Roswell L. Gilpatric and Edwin S. Murphy, both of New York City, of counsel), for Royal Exchange Assurance.

Haight, Griffin, Deming & Gardner, of New York City (Donald Havens, of New York City, of counsel), for Compagnie Generale Transatlantique.

ABRUZZO, District Judge.

In November of 1940, the libellant instituted a suit in this Court by filing a libel in personam with a clause of foreign attachment. The United States Marshal for the Eastern District of New York attached the steamship Fort de France to secure libellant's alleged claim for $145,000, based upon an alleged conversion by the Compagnie Generale Transatlantique. Later, the vessel was released from the custody of this Court upon the deposit by the Compagnie Generale Transatlantique of $155,-487 with the Clerk of this Court, in accor-

dance with Admiralty Rule No. 21, 28 U.S. C.A. following section 723. On June 26, 1941, the libellant filed a discontinuance of this action in the office of the Clerk of the Court.

In March of 1941, the Royal Exchange Assurance, the petitioner herein, commenced an action in the Supreme Court of the State of New York, County of Kings, against the respondent of the discontinued action, Compagnie Generale Transatlantique, to recover the sum of $1,140,139.69 upon a series of unpaid bills of exchange.

The petitioner, the Royal Exchange Assurance, applied for and was granted a warrant of attachment against the property of the Compagnie Generale Transatlantique in order to secure the payment of any judgment which the petitioner might recover against the Compagnie Generale Transatlantique in the Supreme Court of the State of New York.

At the time of the granting of the warrant of attachment, the suit in admiralty was pending in this Court.

The present application is one by the Royal Exchange Assurance, hereinafter referred to as the petitioner, for leave to attach the sum of $155,487, deposited with this Court by the Compagnie Generale Transatlantique, hereinafter referred to as the CGT; and for an order directing that the sum of $155,487 be turned over to the Sheriff of the County of Kings, pursuant to the warrant of attachment issued by the Supreme Court of the State of New York.

The CGT resists the petitioner's application upon two grounds: First, that the funds in the registry of this Court are not subject to process of a state court as a matter of right; and second, that this Court as a Court, sitting in admiralty, has no power to attach these funds now in the registry of this Court.

It becomes necessary in passing upon the petitioner's contention to determine whether or not the funds in the registry of this Court are subject to an attachment issued by the state court. These funds were deposited after the vessel, belonging to the CGT, was libelled and taken into custody by the Marshal of this district. The deposit of this money permitted the vessel to leave port. The libel has been discontinued and the funds are still on deposit in the registry of this Court. In effect, the depositing of this sum in the hands of the Clerk of this Court released the ship and the sum deposited, so to speak, represents the ship. The deposit is held in lieu of the vessel.

The petitioner has cited many cases which it claims give authority to this Court to grant the relief it seeks.

The latest decision cited in support of petitioner's contention is Huron Holding Corporation et al. v. Lincoln Mine Operating Co., 312 U.S. 183, 61 S.Ct. 513, 85 L. Ed. 725, which held that a state court attachment should be given full faith and credit in the United States District Court. However, in that case, no funds existed in the registry of the United States District Court, 27 F.Supp. 720; and it was not an action in which admiralty was at all concerned.

Dunlop v. Patterson Fire Insurance Company, 74 N.Y. 145, 30 Am.Rep. 283, permitted the attachment of an appeal bond. The petitioners herein urge that this Court must follow the state rule as required by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The latter case establishes the rule that the Federal statutes must be adhered to first; next, the state statutes; and finally, the common law of the state. But, the Dunlop case, supra, on its face, had nothing therein pertaining to admiralty. Maritime jurisdiction is exclusively within the Federal Courts.

Buck v. Colbath, 3 Wall. 334, 18 L.Ed. 257, is not an action arising out of admiralty. It held that a United States Marshal may be sued for his own torts in levying upon the property of a man against whom a writ did not run, and on property which was not liable to it. This case is not in point for it does not relate to funds on deposit in the registry of this Court.

The case of Lazarus v. McCarthy, United States Marshal, et al., Sup., 32 N.Y.S. 833, 834, seems to more closely resemble the situation involved herein than any others cited. It appears that an action was started in the Supreme Court of New York State against a foreign corporation in which an attachment against its property was issued; and previous to such action, the corporation had made an assignment for the benefit of creditors to one Daniels as assignee. Daniels filed a claim to the attached property. Later, the action was removed to the Federal Court and by direction of that Court, the United States Marshal took into his possession the property under attachment. The assignee, Daniels, then applied to the Federal Court for

an order directing that the attached property be delivered to him; and such order was granted. The same day, before the actual delivery of the property, Lazarus, the plaintiff, commenced an action in replevin and the property was seized pursuant to a writ of replevin.

Daniels, then, moved to vacate the levy under the writ on the ground that at the time of the levy the property was in the custody of the court. The single question presented for determination was whether the property was so situated that it was subject to levy under the process of the state court action. The court pointed out that if the property were in the custody of the United States Court in such a sense that that court maintained jurisdiction over it, the process of the state court would be ineffectual to take the property from the Marshal.

In overruling the motion to vacate the seizure under the writ of replevin, the Court, following the case of Buck v. Colbath, supra, stated: "In the case at bar, to all intents and purposes, the jurisdiction and custody of the federal court had determined. The property had been claimed by a particular individual, and its possession from the United States marshal had been demanded, and that possession had been awarded to the party applying for it. The order of the court had been made. The possession of the United States marshal ceased to be the possession of the court under the attachment process and under the order of removal. The contest over the res was ended. The court's possession had been turned into a mere technical holding by its officer for the purposes of delivery to the applicant, Daniels. The marshal was commanded by the order of the court forthwith to surrender that possession to Daniels. So far as the United States court was concerned, Daniels' right to the exclusive possession of the property was fully recognized, and all that remained was that the officer of the United States was to deliver physical possession of the property to Daniels."

Bankers' Mortgage Co. of Topeka, Kansas, v. McComb, 10 Cir., 60 F.2d 218, holds that a Federal Court may, in its discretion, permit garnishment of funds in the hands of its Clerk after the purposes for which the law's custody thereof have been accomplished. This case was not in admiralty and merely states what purports to be a common law rule.

These cases just reviewed are examples of the general trend of the authorities submitted by the petitioner. It is the petitioner's desire that the Court reach the conclusion that it should respect the attachment issued out of the Supreme Court of the State of New York by virtue of the general rule established in these cases.

■ There seems no question that under certain circumstances funds in the registry of the United States District Court might be the subject of process of a state court as a matter of right; and the petitioner has presented decided cases which afford some support to this general proposition.

The obstacle confronting the petitioner is the second argument advanced by the CGT; to wit, that the Court, as a Court sitting in admiralty, has no power to attach the funds now in the registry of this Court.

Rules of Practice in Admiralty, No. 42, U.S.Digest, Court Rules, page 52, provides:

"Claims against Proceeds in Registry

*"Any person having an interest in any proceeds* in the registry of the court shall have a right, by petition and summary proceedings, to intervene pro interesse suo for delivery thereof to him, and on due notice to the adverse parties, if any, the court shall and may proceed summarily to hear and decide thereon, and to decree therein according to law and justice. And if such petition or claim shall be deserted, or on a hearing, be dismissed, the court may, in its discretion, award costs against the petitioner in favor of the adverse party." (Italics the Court's.)

In Wilson v. Bell, referred to as The Lottawanna case, 20 Wall. 201, 223, 87 U. S. 201, 22 L.Ed. 259, it was held that such a fund could not be attached. Excerpts therefrom state:

"Different views have in some few instances been adopted by the District Courts, but the right of the court to decree that third persons who could not have proceeded against the property in rem may recover a proportion of the proceeds to satisfy their claims against the owner, in a case where the owner appears and opposes the application, seems to be repugnant to every sound principle of judicial proceeding, and it is certainly opposed to the great weight of authority. [2 Pars. Ship. 231; The New Eagle, 2 W.Rob. 441; Gardner v. The New Jersey [Fed.Cas. No. 5,233], 1 Pet.

Adm. [223], 226; Clement v. Rhodes, 3 Add. Sec. 40.]

\* \* \*

"But the court is entirely of a different opinion, for several reasons:

"1. Because the fund, from its very nature, is not subject to attachment either by the process of foreign attachment or of garnishment, as it is held in trust by the court to be delivered to whom it may belong, after hearing and adjudication by the court. [The Albert Crosby, 1 Lush., R. 101; The Wild Ranger, Brown & Lush., 8; 1 Chit.Archb.Pr. (11th ed.) 702.]

\* \* \*

"3. Judgments were never a lien upon personal property, unless made so by attachment under means process, which is all that need be said in respect to the proposition that the appellees acquired a right of preference to the proceeds in the registry of the court by virtue of their judgment against the owners."

█ The rule, therefore, has been long established that in Admiralty one must possess a maritime interest, legal or equitable, on the funds in the registry of the Court before any petition for a right therein may be granted. This is borne out in The Lottawanna case, wherein it was held that general creditors since they did not possess liens on the funds were not entitled to receive any portion thereof.

In The Edith, 94 U.S. 518, 24 L.Ed. 167, a proceeding in Admiralty, surplus money remained; and it was said: " \* \* \* no one except an owner is entitled to payment out of the registry, unless he has a lien upon the fund therein. The court can marshal the fund only between lien-holders and owners." 94 U.S. at page 523.

In The Willamette Valley, D.C., 76 F. 838, attempts were made to procure rights in a surplus fund after all maritime liens had been paid, and the Court stated at page 841: "The important question to be determined is whether this balance should be turned over to the receiver, as the representative of the owner, or whether any of the other petitioners or interveners have a superior right to be paid out of the surplus. This question depends, obviously, upon the character of the claims presented. But, in order to be entitled to recognition at all by a court of admiralty in distributing surplus proceeds derived from the sale of a vessel seized to satisfy maritime liens, these claims must possess certain qualities. In the first place, they must be vested interests in the fund. This is the meaning given by the supreme court to the language of the forty-third rule, which reads: 'Any person having an interest in any proceeds in the registry of the court, shall have a right by petition and summary proceeding to intervene pro interesse suo, for a delivery thereof to him.' Schuchardt v. Babbidge, 19 How. 239 [15 L.Ed. 625]; The Lottawanna, 21 Wall. 558 [22 L.Ed. 654]; The Albert Schultz [D.C.] 12 F. 156. In the second place, as against the claim of the owner, contesting claimants must have a lien, legal or equitable. As said in The Albert Schultz, supra: 'In the distribution of the funds which form a residuum in the registry, courts of admiralty recognize legal titles and legal and equitable liens.' In The Edith, 94 U.S. [518] 523 [24 L.Ed. 167], it is said: 'The court (of admiralty) can marshal the fund only between lien-holders and owners.' In the third place, this lien must be specific, not general."

Other decided cases in support of this rule are The Balize, C.C., 52 F. 414; The Wyoming, D.C., 37 F. 543; The Advance, D.C., 63 F. 704, and The Wabash, D.C., 296 F. 559.

█ The claim of the petitioner is based upon an allegation of a claim for moneys allegedly due on certain bills of exchange. The action in the Supreme Court is predicated on that ground. The State Supreme Court would not have authority to issue an attachment against the vessel if she were lying in port, for the reason that this Court has exclusive maritime jurisdiction. Attaching a fund in this manner would be depriving the District Court of jurisdiction and placing it within the Supreme Court of the state.

The weight of authority supports the theory advanced by the CGT that the funds in the registry of this Court, deposited by direction of the Court, as a Court sitting in Admiralty, can be reached only by a person having an interest in the proceeds of that fund. The petitioner does not come within the interpretation of these decisions and thereby lacks the requirements to proceed under Admiralty Rule No. 42. Its warrant of attachment, however equitable it might be, is ineffectual in reaching the funds in question.

The petition is therefore denied.