# GREAT WESTERN MINING AND MANUFACTURING COMPANY *v.* HARRIS.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 217.  Argued April 14, 17, 1905.—Decided May 29, 1905.

A receiver is an officer of the court which appoints him, and in the absence of some conveyance or statute vesting the property of the debtor in him, he cannot sue in courts of a foreign jurisdiction upon the order of the court appointing him, to. recover the property of the debtor.. *Booth* v. *Clark,* 17 How. 338.

A receiver's right to sue in a foreign jurisdiction is not recognized upon principles of comity, as every jurisdiction in which it is sought by means of a receiver to subject property to the control of the court, has the right and power to determine for itself who the receiver shall be, and to control the distribution of the funds realized within its own jurisdiction.

Where the receiver can not maintain an action to recover property in a jurisdiction other than that in which he was appointed, jurisdiction is not established because the action is authorized to be instituted by the receiver in the name of the corporation, if it appears that in case of a recovery the property would be turned over to the receiver to be by him administered under the order of the court appointing him.

THIS case was begun by bill in equity filed in the Circuit Court of the United States for the District of Vermont in the name of the Great Western Mining and Manufacturing Company, a Kentucky corporation, by L. C. Black, its receiver, against B. D. Harris, a citizen of the State of Vermont. It is averred that the corporation was duly organized under the laws of the State of Kentucky. In substance the bill sets forth: That the Great Western Mining and Manufacturing Company was organized by the Kentucky legislature on January 19, 1856, for the purpose of owning and operating mining property and selling coal. On or about February 10, 1859, it became the owner of coal properties to the value of about $40,000, situated in Lawrence County, Kentucky. The capital stock of said company was $200,000, divided into 2,000 shares

of $100 each.   That previous to November 10, 1887, the capital stock of the company was owned as follows:

B. D. Harris, the defendant herein, 600 shares, par
    value.................................... $60,000 00
G. D. Harris, 600 shares, par value.............. 60,000 00
John Carlisle, 440 shares, par value.............. 44,000 00
George W. Carlisle, 300 shares, par value........ 30,000 00
James C. Holden, 4 shares, par value............ 400 00
Loring Hinsdale, 4 shares, par value............. 400 00
George S. Richardson, 52 shares, par value....... 5,200 00

On November 10, 1887, the stockholders increased the capital stock in the sum of $50,000, the same being distributed among the stockholders as follows:

To B. D. Harris, 150 shares, par value......... $15,000 00
To G. D. Harris, 150 shares, par value........... 15,000 00
To John Carlisle, 110 shares, par value.......... 11,000 00
To George W. Carlisle, 75 shares, par value....... 7,500 00
To George S. Richardson, 13 shares, par value.... 1,300 00
To James C. Holden, 1 share, par value.......... 100 00
To Loring Hinsdale, 1 share par value........... 100 00

[The record shows that this increase was in fact made on January 11, 1888, in pursuance of a meeting authorized to be called at that date in the meeting of November 10, 1887, and certificates issued January 14, 1888.]·

On April 22, 1889, a further increase of capital stock was had by adding 1,000 shares of $100 each, which was distributed as follows:

To B. D. Harris, 300 shares, par value........... $30,000 00
To G. D. Harris, 300 shares, par value........... 30,000 00
To John Carlisle, 220 shares, par value........... 22,000 00
To George W. Carlisle, 150 shares, par value...... 15,000 00
To George S. Richardson, 26 shares, par value.... 2,600 00
To James C. Holden, 2 shares, par value......... 200 00
To Loring Hinsdale, 2 shares, par value.......... 200 00

The complainant avers that at the time the increases of capital stock were made and carried out the stockholders had formed a plan of issuing bonds and selling the same, and that the issues and distribution of said stock were made for the purpose of defrauding said company, and obtaining without consideration the aforesaid shares of capital stock, and for the purpose of selling the same to the company in connection with the said loan, and defrauding the company out of a part thereof. That said issues of capital stock were made by the shareholders and board of directors, of whom the defendant was one, ostensibly in consideration of alleged betterments of said mining property, which betterments, it was pretended, were made and paid for out of the net earnings of the company, which it was represented had increased the value of the property belonging to the stockholders. Complainant alleges that no such betterments had been made, and if made they were paid for out of money borrowed upon the credit of the company, for which an indebtedness then existed and still exists. That in fact there had been no net earnings which had been put into betterments by the company, and that the issue of said stock was without consideration, illegal and void, and a breach of duty upon the part of the stockholders and the directors of the corporation to its creditors. That said stock so issued still remains outstanding in the names of the parties to whom it was issued or their assignees. That on May 13, 1889, the directors of the company, of whom the defendant Harris was one, and who were also stockholders in the company, for the purpose of defrauding said company and abstracting the assets of the company for their own use and benefit, the corporation then being insolvent, without means to pay its floating indebtedness, which then amounted to $100,000, or more, agreed that they would obtain a loan of $300,000 for said company, said loan to be evidenced by bonds to the number of 300 in the denomination of $1,000 each, to be secured by mortgage upon the property of the company. That the issues of stock had been made upon the consideration that certain betterments

had been added to the property, and had been paid for out of
the profits of the operation thereof, which profits would other-
wise belong to the stockholders, when in truth and fact the
said company was largely insolvent and had a mortgage debt
of about $60,000 upon it and a floating debt of $100,000 or
more.  In fact, said company had not made any net profits
whatever, and said betterments had not been made at all, or,
if made, had been paid for out of the earnings of the company,
and no consideration except that herein stated was ever paid
by the stockholders for the stock issued to them.  That it was
for the purpose of carrying out the scheme of abstracting from
the company money arising from the sale of the bonds, and
for that purpose only, that said stock was issued to the defend-
ant Harris and others.  That said bonds were sold at a price
of eighty-five cents on the dollar, including a bonus of fifty
per cent of the par value of said bonds in the stock of the com-
pany; that is, a purchaser of a $1,000 bond was entitled to
have with said bond $500 of the capital stock of the company.
That in pursuance of the combination aforesaid the said di-
rectors and stockholders furnishing said bonus stock were paid
for the same from the proceeds of the sale of the bonds.  The
stock was furnished as follows in pursuance of the said ar-
rangement:

By B. D. Harris, 450 shares, par value.......... $45,000 00
G. D. Harris, 450 shares, par value..............  45,000 00
John Carlisle, 336 shares, par value..............  33,600 00
George W. Carlisle, 225 shares, par value.........  22,500 00
George S. Richardson, 39 shares, par value.......   3,900 00

That out of the proceeds of the sale of the bonds the sum of
$75,000 was distributed among the parties, as follows:

To B. D. Harris, the defendant herein........... $22,500 00
To G. D. Harris.............................  22,500 00
To John Carlisle.............................  16,800 00
To George S. Richardson......................   1,950 00
To George W. Carlisle........................  11,250 00

That, as a matter of fact, when the stock was contributed the company was insolvent, and could not carry on its business without making the said loan; that said stock was worthless and was sold to the company at fifty cents on the dollar for the purpose above mentioned, and thereafter said stock was transferred to the purchasers of the bonds. Then follow allegations as to the mismanagement of the company, and the wrongful payment of dividends, and the averment that on or about September 12, 1892, one of the creditors of the company was compelled to make an application to the United States Circuit Court of Kentucky, wherein a request was made for the appointment of a receiver of the property and franchises of the company for the purpose of realizing its assets and distributing them among its creditors; that in said proceedings, all of the property of the Great Western Mining and Manufacturing Company was sold and was found to be of the value of $75,666.66, which left a large floating indebtedness of about $90,000, besides a large balance due upon the bonded indebtedness, aggregating about $270,000; that, in said proceedings in the United States Court for the District of Kentucky, L. P. Black was appointed receiver of the assets of the company, for the purpose of realizing upon the same for the benefit of its creditors, and it is averred that by special order of the United States Court said receiver had been directed to prosecute this suit, either in his own name or that of the company, as may be proper. The prayer of the bill is for an accounting respecting the matters and things set up in the bill, and that the defendant be required to pay to the complainant the sums which may be found to be due by reason of the matters and things set forth, and for general relief. An answer and replication were filed, and the issues made up were heard upon the pleadings and testimony. The Circuit Court found the estate of B. D. Harris, he having died pending the suit, liable in the sum of $15,000, being the amount Harris received from the company in exchange for the 300 shares of stock issued to him in April, 1889, and held that the estate was

not liable on account of the amounts received by him for stock previously issued to him, and was not liable to account for the amounts taken by other officers, directors or stockholders of the company. The case in the Circuit Court is reported in 111 Fed. Rep. 38. Upon cross appeals the Circuit Court of Appeals for the Second Circuit reversed the judgment of the court below upon the ground that the Circuit Court had no jurisdiction of the action, as the same could not be brought by the receiver in the name of the corporation, and if it could be maintained by the corporation, or in its behalf, no case was made for a recovery, because of the consent of the stockholders to the transactions complained of. 128 Fed. Rep. 321. The order appointing the receiver in the Circuit Court is found in the record, and is as follows:

"The above cause coming on this day to be heard upon the motion of complainant for appointment of a receiver and having been fully heard and considered, it is ordered by the court that said motion be granted, and that the order hereinbefore entered, appointing L. C. Black as temporary receiver, be continued, and said L. C. Black be and he is hereby appointed receiver of all the property, rights in action, choses in action, and all assets of every description, of the defendant, The Great Western Mining and Manufacturing Co., with all the powers and authority conferred by the order appointing him temporary receiver herein; and that he is to act and continue to act under the orders hereinbefore made, and that he hold and keep the property and assets arising from the funds of said business, or that may come into his hands, subject to such order as may be made from time to time; and it is also ordered that he shall have power to purchase such current supplies as are or may be needed in the proper conduct and operation of the business of said company."

The application for the order to bring this action sets forth:

"The receiver represents that he has ascertained from the books and records of the Great Western Mining and Manufacturing Company, in his possession, that, in connection with

the floating of the loan of $300,000 in the year 1889, upon the property of the Great Western Mining and Manufacturing Company, situate in Lawrence County, Kentucky, certain stockholders and officers of said company combined to obtain for themselves, and did so obtain, proceeds resulting from the sale of said bonds in the sum of $75,000, which money belonged to and should have been paid into the treasury of said company.

"Your receiver says that he finds shares of capital stock of the Great Western Mining and Manufacturing Company were issued at the instance of and through the action of certain of said stockholders and officers of said company, to the amount of $150,000, which said stock was distributed among said stockholders and officers; that as your receiver is informed and believes there was no consideration for the issue and distribution of said stock; that the said stock was sold by said stockholders, so as aforesaid receiving it, to the defendant, The Great Western Mining and Manufacturing Company, and by means of said sale moneys to the amount of $75,000 were abstracted from the treasury of said company; that the issue and distribution of said capital stock was, as your receiver believes, a mere device or instrumentality to abstract said moneys from the treasury of said company; that said company as your receiver believes, has a valid claim against said persons to recover said moneys; that some of said parties are solvent and able to repay said monies, and proceedings should be taken to recover it for said company and its creditors.

"Your receiver further says that he has discovered from the books of the company that apparently, by reason of the inattention and negligence of the board of directors of the said Great Western Mining and Manufacturing Company, and apparently by reason of the mismanagement and misappropriation of the funds of the company, by certain members of said board, that the said company has been greatly damaged, and its assets depreciated in value in a large amount, the exact sum of which is unknown to your receiver, and that said losses

should now be made part of the said company's assets, and that the same is, in the opinion of your receiver, a valid claim against the said board of directors, and that proceedings should be taken to recover the same for the said company and its creditors.

"Wherefore your receiver prays the direction of your honorable court as to his duty in the premises."

Upon this application the court made the following order:

"This cause coming on to be heard upon the application of L. C. Black, receiver herein, asking for instructions as to his duty in the matters and things set forth in the said application, and wherein said receiver represents to the court that in certain transactions connected with the floating of a loan of $300,000 upon the property of the Great Western Mining and Manufacturing Company, apparently $75,000 was withdrawn by certain stockholders and officers of the said company, whereas the same should have been paid into the treasury of the said company; and wherein said receiver further represents that apparently certain stock was issued to the stockholders and officers of the said company without consideration, and that apparently by reason of the inattention and negligence and mismanagement of the board of directors of the said company and the misappropriation of the funds of the said company, said company has been greatly damaged and its assets depreciated.

"And it appearing to the court that it will be for the advantage of the said company that suit shall be instituted against the stockholders and directors of the same for the recovery of the sums so represented to be lost, it is, therefore, directed that said receiver proceed in his own name as receiver or in the name of the company, as he may be advised, to recover said sums."

*Mr. Harlan Cleveland* for petitioner as to the right of receiver to maintain the action:

The United States Circuit Court for Vermont had jurisdic-

tion of the suit. The cases cited by the Circuit Court of Appeals simply decide that an ordinary receiver in whom no title has vested cannot in his own name maintain a suit in a court of another State to recover assets or enforce double liability.

But the court in collecting the assets of a corporation is acting within its powers on behalf of the corporation, or as the successor of the officers of the corporation in directing suit to be brought by it and in its name.

When the United States Circuit Court for the District of Kentucky appointed a receiver of The Great Western Mining and Manufacturing Company, and by that act assumed charge of the assets and affairs of the corporation, it took the place, and could exercise the powers, of the directors. See authorities so holding as to calls or assessments on stockholders for the unpaid portion of the subscription price of stock. *Scoville* v. *Thayer*, 105 U. S. 143, 155; *Hawkins* v. *Glenn*, 131 U. S. 319, 329; *Glenn* v. *Marbury*, 145 U. S. 499, 510; *Gt. W. Tel. Co.* v. *Purdy*, 162 U. S. 329, 336; *Hayward* v. *Leeson*, 176 Massachusetts, 310; Kentucky Codes, § 302.

The practice is entirely familiar to courts of chancery.

In *Taylor* v. *Allen*, 2 Atk. 213, a receiver to collect the assets of a testator was empowered to sue in the name of the executrix. *Pitt* v. *Snowden*, 3 Atk. 750; *Yeager* v. *Wallace*, 44 Pa. St. 291; *Merritt* v. *Merritt*, 16 Wend. 405; *Freeman* v. *Winchester*, 10 S. & M. (Miss.) 577; *Green* v. *Winter*, 1 Johns. Ch. 60.

Even if the suit be treated as one brought by the receiver in his own name, it is maintainable on the principle of comity.

In Kentucky a receiver can bring an action in his own name. Codes, § 21.

The receiver could undoubtedly have maintained this suit in Kentucky in his own name. Kentucky allows foreign receivers to sue in that State by comity when there are no domestic creditors requiring protection or no infringement of the public policy of that State or no injustice would be done thereby to the citizens within its jurisdiction. *Rogers* v. *Riley*, (Ky.) 80 Fed. Rep. 759; *Zacher* v. *Fidelity Trust Co.*, 106 Fed.

Rep. 593; *S. C.*, 59 S. W. Rep. 493; *Kirtley* v. *Holmes*, (Ky.) 107 Fed. Rep. 1, 9; *Johnson* v. *Roger's Receiver*, (Ky.) 43 S. W. Rep. 234; *Weedon* v. *Association*, (Ky.) 59 S. W. Rep. 758. This seems to be the general rule. *Howorth* v. *Augle*, 162 N. Y. 179; *Howorth* v. *Lombard*, 175 Massachusetts, 570; *Howorth* v. *Elwanger*, 86 Fed. Rep. 54; *Sands* v. *Greeley*, 88 Fed. Rep. 130; *Burr* v. *Smith*, 113 Fed. Rep. 858; *Lewis* v. *Naval Stores*, 119 Fed. Rep. 396, 397; *Metzner* v. *Bauer*, 98 Indiana, 425; *Boulware* v. *Davis*, 90 Alabama, 207; *Cooke* v. *Orange*, 48 Connecticut, 401; *Planters'. Bank* v. *Bank*, 2 La. Ann. 430; *Comstock* v. *Frederickson*, 51 Minnesota, 350; *Hurd* v. *Elizabeth*, 41 N. J. Law, 1; *Sobernheimer* v. *Wheeler*, 45 N. J. Eq. 614; *Runk* v. *St. John*, 29 Borh. 585; *Barclay* v. *Quicksilver Min. Co.*, 6 Lans. 25; *Pugh* v. *Hurtt*, 52 How. Pr. 22; *Dyer* v. *Power*, 60 Hun, 583; *Merchants' Bank* v. *McLeod*, 38 Ohio St. 174; *Porter* v. *Stoughton Mill Co.*, 91 Wisconsin, 174; *Wyman* v. *Kimberly Clark Co.*, 93 Wisconsin, 554.

Nothing in the public policy or decisions of Vermont precludes a foreign receiver from suing in the courts of that State, under the circumstances of this case. No creditor in Vermont has intervened to prevent the prosecution of this suit. The Harris estate alone objects to this suit being maintained.

The right to recover on the one hand property of a corporation or its proceeds which have been misappropriated by officers and directors, or on the other hand damages for its misappropriation, is in the corporation. *Porter* v. *Sabin*, 149 U. S. 473; *Hawes* v. *Oakland*, 104 U. S. 450; *Davenport* v. *Dows*, 18 Wall. 626; *Van Weel* v. *Winston*, 115 U. S. 228.

*Mr. Brainard Tolles*, with whom *Mr Julien T. Davies* was on the brief, for respondents as to the right of receiver to maintain action:

The order of the Circuit Court for the District of Kentucky was not effective to authorize the receiver to maintain a suit in the name of the mining company, in the Circuit Court for the District of Vermont. The receiver was a mere instrument

of the court which appointed him, for the exercise of its ordinary jurisdiction in equity.

No assignment or transfer of its property to the receiver was ever made by the mining company and no authority was ever given to the receiver to file this bill in the name of the mining company. The receiver has no statutory title to the property of the corporation, nor any statutory right to sue in its name. The only justification of his action in making use of the name of the corporation for the purpose of this suit is found in the order of the Circuit Court.

There were both stockholders and directors of this corporation in the District of Kentucky at the time that order was made, no proceedings were instituted in said District, in pursuance of said order. But in the District of Vermont a bill was filed in the name of the mining company, not authenticated by its seal nor verified or signed by any of its officers.

To sign the name of another, without his consent, to a bill of complaint or to an appeal bond, is an act which requires affirmative justification. When the act is done in the District of Vermont, and the object of the act is to get possession of property having a *situs* in said District, and the official character of the receiver and the Circuit Court for the District of Kentucky had no power to authorize such act for such a purpose outside of the District. The order was one which could have been acted on only within the District.

As to comity this court is not constrained, by judicial precedent, or by any settled course of practice in this country, to adopt the English rule. *Booth* v. *Clark,* 17 How. 322.

In the Federal courts it has never been doubted that *Booth* v. *Clark, supra,* was conclusive against the right of receivers to sue in the courts of the United States, outside the State or District in which they were appointed. *Brigham* v. *Luddington,* 12 Blatchf. 237; *Kittel* v. *Augusta &c. R. Co.,* 78 Fed. Rep. 855; *Hazard* v. *Durant,* 19 Fed. Rep. 471; *Philadelphia &c. Iron Co.* v. *Daube,* 71 Fed. Rep. 583; *Wigton* v. *Bosler,* 102 Fed. Rep. 70.

The only Federal case to the contrary, *Hale* v. *Hardon*, 95 Fed. Rep. 747, was overruled in *Hale* v. *Allinson*, 188 U. S. 56, and *Hilliker* v. *Hale*, 117 Fed. Rep. 224 (certiorari refused, 188 U. S. 739).

Constrained by the authority of *Booth* v. *Clark*, *supra*, the courts of the United States have built up a system of procedure for dealing with the affairs of insolvent corporations, which rests upon firmer ground than that of comity, and which avoids the practical objections pointed out in *Booth* v. *Clark*, while securing to foreign creditors reasonable facilities for the collection of their debts. The system which has thus been evolved has the spirit of comity, but is made effective through the exercise by each court of its own jurisdiction, rather than by the abdication of jurisdiction on the part of any court in favor of another. *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep. 305; *Mercantile Trust Co.* v. *Kanawha &c. R. Co.*, 39 Fed. Rep. 337; *Platt* v. *Philadelphia & R. R. Co.*, 54 Fed. Rep. 569; *Central Trust Co.* v. *East Tennessee &c. R. Co.*, 69 Fed. Rep. 658; *Ames* v. *Union Pacific R. Co.*, 60 Fed. Rep. 966; *Bayne* v. *Brewer Pottery Co.*, 82 Fed. Rep. 391; *Sands* v. *E. S. Greeley & Co.*, 88 Fed. Rep. 130; *Reynolds* v. *Stockton*, 140 U. S. 254; *In re Brant*, 96 Fed. Rep. 257; *Shinney* v. *North American Savings &c. Co.*, 97 Fed. Rep. 9; *Coltrane* v. *Templeton*, 106 Fed. Rep. 370; *Lewis* v. *American Naval Stores Co.* 119 Fed. Rep. 391; *Conklin* v. *U. S. Shipbuilding Co.*, 1?? Fed. Rep. 913.

These decisions show a system of procedure which, while perhaps not complete or incapable of improvement, is far superior to that which this court was urged to adopt in *Booth* v. *Clark*. It is a system now universally understood. It works smoothly in practice. It effectively protects the rights of possible creditors in each jurisdiction where assets are found, by compelling the foreign receiver to give reasonable security and to submit himself to the orders of the local court before removing assets which may be needed to meet the claims of domestic creditors. It provides a convenient forum in which

such creditors may prove their claims. It enables the receiver appointed by a foreign court, without delay or publicity or unreasonable expense, to qualify himself to collect or impound assets properly forming part of the estate under administration. It avoids unseemly conflicts of judicial authority. It provides a central tribunal for the determination of those questions of general policy which must be decided with reference to a great system of railways of a great business undertaking, while leaving to local tribunals full power over questions of a local nature. The courts of the several States and the legal profession throughout the United States are gradually conforming their practice to the standard thus established.

As to the claim that the right of the court appointing the receiver to authorize him to sue in the name of a party is absolute, and does not rest on comity, the court can no more invest the receiver with the name, identity and citizenship of a party for the purpose of suit in a foreign jurisdiction than it can confer on him a defendant's complexion, reputation, chirography or good health. *In re Sawyer*, 124 U. S. 310.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The theory of the complainant's case seems to be that the transfers of the stock of the defendant and other directors and stockholders, paid for out of the proceeds of the bonds, in view of the allegations of the bill as to the condition of the company and the purposes in view by the defendant and associates, amounted to a breach of duty upon the part of the defendant and other directors, and a conversion to their own use of the property of the company, for which they should be held to account in an action brought by the company through its receiver, under the order of the Circuit Court of Kentucky. The particulars of the suit in which the receiver was appointed are not very fully set forth, but enough appears to show that he

was appointed in a suit to adjudicate and enforce liens and subject the property to the payment of the claims of creditors. In the brief of the learned counsel for complainant, it is styled a "general creditors' and foreclosure suit." It does not appear that by order of the court or otherwise there has been any conveyance of the property and assets of the company to the receiver, nor has the corporation been dissolved, and the receiver made its successor, entitled to its property and assets. The minute books of the company in evidence do not show any authority by the corporation for the filing of this bill in the name of the Great Western Mining and Manufacturing Company or otherwise, although meetings were held after the appointment of the receiver. Nor is our attention called to any statute vesting the title of the corporation in the receiver. So far, then, as the receiver is concerned, his right to prosecute the action must depend upon his powers as such officer of the court and the order of the court, set forth in the statement of facts, authorizing him to bring suit against the stockholders and directors for the purpose of realizing the assets, either in his own name or that of the corporation, as may be proper. This condition of the record brings up for consideration at the threshold of this case the question of the extent of the power of the receiver to maintain this action under the order of the court, either in his own name or that of the company. As to the power of the court to authorize the receiver to sue, we think the case is ruled by *Booth* v. *Clark*, 17 How. 322, 338, in which case the authority of the court to authorize a receiver appointed in one jurisdiction to sue in a foreign jurisdiction was the subject of very full consideration. In that case it was held that a receiver is an officer of the court which appoints him, and, in the absence of some conveyance or statute vesting the property of the debtor in him, he can not sue in courts of a foreign jurisdiction upon the order of the court which appointed him, to recover the property of the debtor. While that case was decided in 1854, its authority has been frequently recognized in this court, and as late as *Hale* v. *Allinson*,

188 U. S. 56, it was said by Mr. Justice Peckham, who delivered the opinion of the court:

"We do not think anything has been said or decided in this court which destroys or limits the controlling authority of that case."

In that case the following language, as to a receiver's powers, from *Booth* v. *Clark, supra,* is quoted with approval:

"He has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

Mr. Justice Wayne, who delivered the opinion of the court in *Booth* v. *Clark,* stated, among others, the following reasons for refusing to recognize the powers of a receiver in foreign jurisdictions:

"We think that a receiver could not be admitted to the comity extended to judgment creditors, without an entire departure from chancery proceedings, as to the manner of his appointment, the securities which are taken from him for the performance of his duties, and the direction which the court has over him in the collection of the estate of the debtor, and the application and distribution of them. If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official accountability. All that could be done upon such an application from a receiver, according to chancery practice, would be to transfer him from the locality of his appointment to that where he asks to be recognized, for the execution of his trust in the last, under the coercive ability of that court; and that it would be

difficult to do, where it may be asked to be done, without the court exercising its province to determine whether the suitor, or another person within its jurisdiction, was the proper person to act as receiver."

It will thus be seen that the decision in *Booth* v. *Clark* rests upon the principle that the receiver's right to sue in a foreign jurisdiction is not recognized upon principles of comity, and the court of his appointment can clothe him with no power to exercise his official duties beyond its jurisdiction. The ground of this conclusion is that every jurisdiction, in which it is sought by means of a receiver to subject property to the control of the court, has the right and power to determine for itself who the receiver shall be, and to make such distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein, and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court or its approval as to the officer who shall act in the holding and distribution of the property recovered. In *Quincy &c. Railroad Co.* v. *Humphreys*, 145 U. S. 82, the powers of a receiver were under consideration, and the following language was quoted with approval (p. 98): "The ordinary chancery receiver, such as we have in this case, is clothed with no estate in the property, but is a mere custodian of it for the court; and, by special authority, may become an officer of the court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned." There are exceptional cases, such as *Relfe* v. *Rundle*, 103 U. S. 222, in which the entire property of the insolvent company was vested in the superintendent of insurance of the State, where his authority did not come from the decree of the court, and his right to sue was maintained. In *Hawkins* v. *Glenn*, 131 U. S. 319, it appeared that Glenn had derived title by assignment and deed and he was permitted to sue. In the case now before us it does not appear that the receiver had any other title to the assets and property of the company than that derived from

his official relation thereto as receiver under the order of the court. In such a case we think the doctrine of *Booth* v. *Clark* is fully applicable. It is doubtless because of the doctrine therein declared that the practice has become general in the courts of the United States, where the property of a corporation is situated in more than one jurisdiction, to appoint ancillary receivers of the property in such separate jurisdictions. It is true that the ancillary receiverships are generally conducted in harmony with the court of original jurisdiction, but such receivers are appointed with a view of vesting control of property rights in the court in whose jurisdiction they are located. If the powers of a chancery receiver in the Federal courts should be extended so as to authorize suits beyond the jurisdiction of the court appointing him, to recover property in foreign jurisdictions, such enlargement of authority should come from legislative and not judicial action.

Nor do we think the jurisdiction is established because the action is authorized to be instituted by the receiver in the name of the corporation. Such actions subjecting local assets to a foreign jurisdiction and to a foreign receivership would come within the reasoning of *Booth* v. *Clark*. If a recovery be had, although in the name of the corporation, the property would be turned over to the receiver, to be by him administered under the order of the court appointing him.

It is urged that jurisdiction in this case is sustained by the case of *Great Western Tel. Co.* v. *Purdy,* 162 U. S. 329, in which it was held that the assets and affairs of an insolvent corporation being in the hands of a receiver, the court might direct the calls or assessments upon delinquent shareholders who had not paid for their shares, thereby using the authority the directors might have exercised before the appointment of the receiver. In that case, a receiver appointed by the Circuit Court of Cook County, in Illinois, under the direction of that court brought an action in the name of the Great Western Telegraph Company, an Illinois corporation, by its receiver, against Purdy, a citizen of Iowa, to recover a sum alleged to

be due from him upon an assessment upon his stock subscription, and it was held that the Illinois court might make the assessment and calls necessary to collect the stock which would be binding in another court. The jurisdiction of the Iowa court was not called in question in the state court of Iowa, where the original action was brought, nor was the question of jurisdiction raised in this court, or passed upon in deciding the case. While not detracting from the authority of that case as to the matter decided, we see nothing in it to indicate that had the question herein presented been made it would have been decided otherwise than herein indicated.

There are numerous and conflicting decisions in the state courts as to the rights of a receiver to sue in a foreign jurisdiction upon principles of comity, which it is not necessary to review here. In this court, since the case of *Booth* v. *Clark, supra,* we deem the practice to be settled, and to limit a receiver, who derives his authority from his appointment as such, to actions, either in his own name, or that of an insolvent corporation, to such as may be authorized within the jurisdiction wherein he was appointed.

We think the Circuit Court of Appeals was right in holding that the Circuit Court had no jurisdiction of this action.

This view of the case renders it unnecessary to consider the other questions made in the record.

*Decree affirmed.*

MR. JUSTICE BREWER concurs in the decree.