## MORLAN v. LUCEY MFG. CORPORATION.

(District Court, S. D. California. August 1, 1925.)

No. 1914.

1. **Banks and banking** ☜118—**Assignments of notes presumed to be incidental to bank's general business, and necessary measure for collection of debts due it.**

Bank officers' assignments of notes payable to it to one suing thereon will be presumed to be incidental to bank's general business, and a necessary measure for collection of debts due it.

2. **Banks and banking** ☜101—**Bank's assignment to its subordinate officer of notes payable to it held not subject to collateral attack by payor.**

In action by assignee of notes payable to a bank, the bank's assignment to subordinate officer of the bank. held not subject to collateral attack by payor.

3. **Banks and banking** ☜98 — **Bank may indorse in course of collection notes payable to it.**

Bank has implied power to indorse in course of collection notes payable to it.

4. **Receivers** ☜207—**Receivers did not have custody of assets beyond jurisdiction of court appointing them.**

Receivers did not have custody of assets beyond jurisdiction of court appointing them.

5. **Receivers** ☜209—**Mutual understanding between representative of California creditors and foreign receivers held not to estop assignee of such representative.**

Mutual understanding between representative of California creditors and receivers appointed in New York over defendant's property held not to affect status of defendant's assets in California, nor estop assignee of such representative in enforcement of his claims.

6. **Election of remedies** ☜4—**Courts, in applying rule of election of remedies, exercise wide discretion to avoid oppression.**

Courts, in applying rule of election of remedies, exercise wide discretion to avoid oppression.

7. **Election of remedies** ☜9—**Doctrine of election of remedies usually exercised after party has gained some advantage by first suit.**

Doctrine of election of remedies usually is exercised after party has gained some advantage by first suit, as where he has shared in the

fruits of other litigation, or obtains judgment elsewhere in his favor.

**8. Courts ⬅519 — Comity which exists between courts of some states does not obtain in federal courts.**

Comity which exists between courts of some states does not obtain in federal courts.

**9. Receivers ⬅207 — Receivers appointed in New York acquired no dominion over assets in California by instructions to company's manager.**

Receivers appointed in New York to take charge of the property of defendant company acquired no dominion over the company's assets in California by instructions to the company's local manager in California.

**10. Receivers ⬅209—Local creditors held not bound by acts of company's local manager.**

Local creditors of company in hands of receivers in foreign jurisdiction *held* not bound by acts of company's local manager.

**11. Receivers ⬅209 — That creditors knew company's local manager acted as agent of receivers held not to preclude assignee from enforcing his demands against company's property in state.**

That creditors knew that company's local manager acted as agent of receivers, even to the extent of recognizing his representative capacity, *held* not to preclude assignee of creditors from enforcing his demands against company's property in state; the receivers being without any power to delegate authority to a local manager.

**12. Receivers ⬅209—Agreement of bank with receivers not to subject deposits to its lien held not available to defendant in suit by bank's assignee.**

In action by assignee of bank against a company for which in a foreign jurisdiction receivers were appointed, agreement of bank with receivers that deposits would not be subjected to its lien *held* not to affect assignee's rights to levy statutory lien, under Code Civ. Proc. Cal. § 537, in absence of any other created by the receivership suit; such defense being available only to the receivers.

At Law. Action by Malcolm F. Morlan against the Lucey Manufacturing Corporation, originally commenced in a state court and subsequently removed to the federal court. Judgment for plaintiff ordered.

Lawler & Degnan, of Los Angeles, Cal., for plaintiff.

Gibson, Dunn & Crutcher, of Los Angeles, Cal. (Godfrey Goldmark, of New York City, and Henry F. Prince, of Los Angeles, Cal., of counsel), for defendant.

SHEPPARD, District Judge. The plaintiff, as assignee of approximately $215,000 of claims of California creditors of the Lucey Manufacturing Company, a New York corporation, brought this action in the superior court of California in the ordinary form of assumpsit with ancillary attachment. Levy and garnishment thereunder were made of defendant's assets in California, under Code Cal. § 537.

Defendant removed the case to this jurisdiction in due course, and answered, after denying the validity of the assignments as to part of the cause of action, that defendant company was in receivership by appointment of the United States District Court for the Southern District of New York on a creditor's bill, to which defendant, by its answer there, had assented; that said receivers were invested since August, 1923, with the custody and control of the property and assets of defendant, of every kind, wheresoever situate, said order appointing the receivers carrying the usual injunction against interference; that several of the claims comprising plaintiff's cause of action had before been assigned to a creditors' committee of New York, organized after receivership to preserve the assets and to work out a reorganization of the company, looking to time acceptances by the creditors generally, and ultimately to the liquidation in full of the corporation's indebtedness; that the Farmers' & Merchants' National Bank of Los Angeles, the largest single creditor, had through its representative, Rossetti, collaborated with the purposes of the creditors' committee, organized as an adjunct of the equity suit, and he had agreed with the committee that, as to future deposits of the receipts of the company in California, the bank would "treat same as receivership funds"; that because of these and other such overtures on the part of the bank's officers, plaintiff in this action, as assignee of the claims, is estopped by election of his assignors from attaching the assets of defendant situated in California. Such, briefly, are the defenses made here.

A jury being waived, the case was tried to the court. The evidence submitted tended to show that receivers for the property of the defendant were appointed in the Southern district of New York on the usual creditors' bill, not charging insolvency, but admittedly for the purpose of conserving the assets. In August, 1923, the defendant answered the bill in the New York court as proper and submitted to the relief sought in that bill. Soon after a creditors' agreement was stipulated in New York between certain creditors, agreeing to accept time notes of the company. It was intended to obtain extensions for two years from creditors throughout the world; the company doing extensive business in several of the states and in foreign countries. The California

claims approximated in amount a quarter of a million dollars, and a majority of the claims were filed with the creditors' committee organized in New York. The evidence further disclosed that the receivers took steps through the resident agent of the company to inform California creditors that the former did not recognize the claims of local creditors as having priority over the general creditors.

The plans of the creditors' committee in New York for liquidation and reorganization for sundry reasons not necessary to this recital, did not mature, and Rossetti, an officer of the Merchants' & Farmers' National Bank, and recognized spokesman of the California creditors in the negotiations with the New York committee, was notified that the reorganization scheme was abandoned and that the "credits of the receivers in California would be withdrawn." Then it was the bank by its officers assigned to a subordinate officer of the bank the plaintiff's claims, which had been handled by Rossetti in his conferences with the committee—inter alia, the negotiable bills of the company held by the bank for $150,000. It was shown at the trial that Rossetti, the representative of the bank and of other claims, had attended the creditors' meetings in New York with the view of co-operating with the New York receivers, and in correspondence represented to the committee that the California creditors would "Withhold hostile proceedings" in California, provided no action was taken by receivers "which would be adverse to the interests of California creditors." It was agreed that the receivers would not undertake to remove the corporation's assets from California, except on a basis satisfactory to such creditors.

Everett, who had been in control of the company's business in California, was continued in authority by the receivers, with directions to transact future business in the name of the receivers, with assurances from Rossetti that the bank would not disturb any funds deposited with it. Everett circularized the California creditors, to allay any apprehension, that the assets in California would remain in the state, subject to the claims of local creditors. The receivers disclaimed authority for this assurance given out by Everett, instructing him to advise creditors that no preferences whatever could be recognized, and that the assets of the company in California would be applicable to claims of all creditors alike. This pronunciamento was brought to the attention of Rossetti, the acknowledged representative of the local creditors. It may be accepted that the California creditors understood that the hope of the creditors' committee was to conserve the assets everywhere for a distribution ratably. There is likewise evidence that the filing of the claims with the New York committee was upon condition that the assets in California should not be withdrawn without notice and consent of California creditors.

[1, 2] It is contended that, upon this course of conduct, the assignment to the creditors' committee amounted to a submission to the equity suit pending in New York, and was equivalent to an irrevocable election by the California creditors of the remedy they would pursue. There was objection by the defendant to the admission in evidence of the notes payable to the bank, and by the latter through its officers assigned to the plaintiff, on the ground that such assignments were without authority of directors and were therefore conduct ultra vires. Passing from the summary of the pleadings and evidence to legal questions evolved: It may be assumed that this transaction was incidental to the bank's general business, and a necessary measure for the collection of debts due the bank. At any rate, it is not subject to collateral attack by the payor.

[3] The evidence showed that the indorsements were made in course of collection for the bank, and, if open to question by defendants, upon reason and expediency, the practice is approved as one of the implied powers of banks. United States Nat. Bank v. First Nat. Bank, 79 F. 296, 24 C. C. A. 597; Bank of Belleville v. Manufacturers' Bank of Chicago, 101 U. S. 181, 25 L. Ed. 907; Stone v. Gray, 10 Cal. App. 609, 103 P. 155; Dollar v. Int. Banking Association, 13 Cal. App. 331, 109 P. 499. It would scarcely be contended that the same cause of action could be made the basis of a second suit against defendant, as shown in the cases, supra, and payment once by defendant would be a perfect defense to the second action.

[4, 5] Pretermitting the question as to the competency of the Lucey Manufacturing Corporation, while in the hands of receivers in the state of its domicile, to defend the present action in the face of a general injunction of a court having jurisdiction of defendant, and conceding that the receivers did not qualify in the Southern district of California, it follows they at no time had

custody of the assets beyond the jurisdiction of the court appointing them, and, whatever may have been their directions to Everett, the general agent of defendant in California, or whatever the policies discussed between the receivers and Rossetti as representative of the local creditors, such things could not affect the status of defendant's assets in California, and the plaintiff may not be estopped by the mutual understandings between the parties in a foreign jurisdiction. Great Western Mining & Manufacturing Co. v. Harris, 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163; Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380.

For reasons best known to themselves, the receivers did not extend their authority by appropriate proceedings to the situs of the assets they were appointed to conserve, but preferred to deal with them at arm's length, presumably upon a theory of comity which hereafter to be noted does not exist in the federal jurisdiction. There was some sort of argument at the trial that, since there was an equity cause against the defendant pending in the Southern district of New York, it was open to the California creditors to have transferred the authority of the receivers to this jurisdiction. Probably they may have done so; but, if they preferred not to do so, in the light of the "understanding" with the receivers to leave the assets in California undisturbed, even under specified conditions, they were not called upon thus to facilitate the general creditors, nor concluded thereby from resorting to a local forum for an available remedy.

[6] The major defense interposed by defendant at the trial, however, was that, several of plaintiff's assignors had before this action submitted their claims to the receivers in the equity cause pending in New York, and plaintiff therefore is estopped to maintain this action on such of the claims as had previously been filed with the New York receivers, invoking the doctrine of election of inconsistent remedies as applicable to plaintiff's action. It may be that an assignee is bound by the acts of his assignor, if his conduct demonstrates a purpose to elect when the remedies in the respective courts are concurrent. Griesa v. Mutual Life Insurance Co., 169 F. 509, 94 C. C. A. 635; Zimmerman v. Harding, 227 U. S. 489, 33 S. Ct. 387, 57 L. Ed. 608. Recognizing the reason for the doctrine of election when first established by Lord Bacon (Fleming v. Courtenay, 95 Me. 139, 49 A. 614), who

observed that "double vexation is not to be allowed," the cases in general turn upon the question of inconsistency of remedies where relief sought is equally available. 20 Corpus Juris, 31. Usually the practice is to require the election to be made in the equity cause, and in applying the rule courts exercise a wide discretion, in order that it may not be made an instrument of oppression. 20 Corpus Juris, 340, B.

[7] It is usually exercised after the party has gained some benefit or advantage by the first suit; for instance, having shared in the fruits of other litigation, or where judgment is obtained elsewhere in his favor. While there is much conflict on the subject, admittedly the trend of authority favors the rule stated. Be that as it may, the proof in this case shows that the claims filed with the creditors' committee, or receivers, if you prefer, were filed in contemplation that the assets of the company would be transferred to a new corporation, as security for the two-year notes that were to be taken by the creditors; that the original plans were abandoned, but during the entire negotiations the California creditors were insistent that the assets in California be left there, which was acceded to by the receivers on certain conditions, satisfactory to local creditors. That the purpose and object of the California creditors participating in the New York proceeding was to co-operate with the contemplated plan for the return of the assets to the corporation and the dismissal of receivership is fairly borne out by the evidence. Several months before this action started all plans for liquidation were in abeyance, and no steps had been taken by the receivers to impress the property here with the objects of the New York equity suit.

Many authorities have been urged upon the attention of the court in support of defendant's contention that filing with the New York receivers a part of the claims included in plaintiff's cause of action, together with Rossetti's co-operation with the original plans of the creditors and Rossetti's concurrence with regard to the directions to Everett, the local manager, was equivalent to an election which would estop plaintiff in this action.

An examination of the cases cited by defendant will disclose much dissimilarity of facts from the instant case. Several of the cases cited show that there was an intervention by cross-bill or otherwise asking affirmative relief in the main cause. In most of them insolvency was the ground for receivership, and the equity proceeding had

been invoked for ratable distribution. In others, those claimants' bound by election had received their dividends and consequently foreclosed to pursue other means of collection elsewhere. Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538, when analyzed, does·not support defendant's argument. There it was decided that an election takes place where insolvency exists and is the ground for administration, and the assets are shown to be insufficient.

Following the cases submitted by defendant, it is noticed nearly all of them turn on either insolvency as the ground of receivership, or that the election is predicated upon sharing in the results of the suit to which they were parties. One exception may be the Continental Oil Co. v. American Co-operative, etc., 228 P. 503, a Wyoming case stressed by defendant as in point. There a non-resident creditor sued a corporation of that state, making another, Clark, a resident also· of Wyoming, a party by a bill which sought to appropriate certain properties in Clark's possession, claimed to be the property of the corporation, asking that Clark be made to account therefor. The latter claimed to have been a bona fide purchaser from the receiver of the corporation appointed by a Wisconsin court; the latter court having required all creditors to intervene in that court for the establishment of their claims. Clark, defendant in a Wyoming suit, had intervened, and it does not appear in the opinion of the Wyoming court that the basis of the Wisconsin suit was insolvency, though it may be inferred. It does appear that the receivers of the Wisconsin court took actual possession of the assets in Wyoming, as the New York receivers may have done in California. The Wyoming court held that the defense of the receivers was available to Clark, their vendee. The vendee's position in that proceeding is a different thing from defendant's attempt here to bind by an election the plaintiffs in a foreign jurisdiction.

[8] That case, it will be observed, recognizes, also, the rule of comity which exists between the courts of some states, which does not obtain in the federal courts. Great Western Mining & Mfg. Co. v. Harris, 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163. Warriner v. Faut, 114 Miss. 174, 74, So. 822, is urged upon the attention of the court as distinctly holding that by the act of a creditor filing his claim in another forum in a different suit he is thereby precluded by his election from maintaining in another attachment for his debt. It is disclosed by the recited facts of that case that the attachment plaintiff was a party to the suit in the foreign jurisdiction, whose bill procured the appointment of receivers. It is observed, also, that the objection that the election in that case was interposed by the receivers, who had been appointed on the prayer of attachment plaintiff. The cases reviewed show that the defense of election was interposed by the receiver or his assignee, as in the case of Continental Oil Co. v. Co-operative Association, supra. Sufficient is shown to differentiate the cases from the facts here without further reference to defendant's authorities.

[9, 10] Defendant's evidence at trial tended to show that there was only a qualified submission to the New York receivers, assuming that the company's difficulties would be worked out, the receivers dismissed, and the assets restored to the corporation. The California creditors were assured that the assets there would not be disturbed without timely notice. What was this arrangement meant for, except to gain time in which the creditors in California might impress the assets with any preferences the statutes of that state might afford? The receivers acquired no dominion over the assets in California by instructions to the company's manager, Everett. Local creditors were in no wise bound by the acts of the latter.

[11, 12] Mere knowledge of the fact that he was acting as agent of the receivers, or even recognizing his representative capacity when the receivers could not delegate any authority, would not preclude the plaintiff from pursuing his legal remedy in the forum of the defendant's property. Fowler v. Osgood, 141 F. 20, 72 C. C. A. 270, 4 L. R. A. (N. S.) 824; Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380. Whether the deposits made in the bank by Everett were to be "treated as credits of the receivers," or that the bank would not subject the deposits theretofore or thereafter made to its lien, would not affect plaintiff's right to levy a statutory lien, in the absence of any other created by the equity suit in a foreign jurisdiction. Such a defense, it appears, would be available only to the receivers.

It follows that, upon the case made by the pleadings and proof, there should be a verdict and judgment for the plaintiff; and it will be so ordered.