**OAKES v. LAKE, Sheriff.**

No. 6909.

Circuit Court of Appeals, Ninth Circuit.

Jan. 9, 1933.

P. J. Gallagher and Geo. B. Guthrie, both of Portland, Or., for appellant.

William Healy, of Boise, Idaho, and Earl E. Garrity, of Silver City, Idaho, for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

Some years prior to this proceeding, W. S. Skinner and his wife executed a deed of trust mortgaging certain real and personal property situate in Malheur county, Or. The personal property thereunder included a band of cattle numbering 141 head and bearing a certain brand, and is the property here in controversy. Default was made by the mortgagors and the property was turned over to the trustee under the deed of trust in a foreclosure suit. At the same time, March 17, 1931, appellant was appointed receiver of the property by an order of the state court of Oregon in which the foreclosure proceedings were had. The order appointing the receiver recites that he is "authorized, empowered, and directed to take immediate possession of all and singular the property, both real and personal described in or subject to the said mortgage or deed of trust." The cattle were left on the ranch of the Skinners, the defaulting mortgagors, and were run with other cattle there. It is claimed that the cattle were in the charge of an agent of the receiver on the Skinner ranch. However this may be, in June, 1931, without the knowledge or consent

of the receiver, the cattle crossed over the boundary line of Oregon into Owyhee county in the state of Idaho, and about July 1, 1931, while in the latter place, the band were seized by appellee, sheriff of Owyhee county, and defendant below, under an attachment suit brought in the Idaho state court by one Summerville against W. S. Skinner. After a demand by the receiver on the sheriff for the return of the cattle, the receiver instituted this proceeding in claim and delivery in the United States District Court for the District of Idaho.

At the conclusion of the testimony on behalf of the receiver, the court granted a motion for nonsuit. The motion was on the following grounds: "The defendant moves that the plaintiff be non-suited, and dismissal entered, upon the ground and for the reason that the proof shows that plaintiff has no capacity to sue in the courts of this state, inasmuch as he has neither title to the property under the Oregon law or the order of the court appointing him, nor had actual possession of the property, either in the State of Oregon or the State of Idaho, and second, on the ground that the action against the Sheriff, being an action in replevin, will not lie, in the United States Court to take property from the possession of a state court. We have a number of authorities. It was also urged by counsel for defendant in support of his motion that the demand made on the Sheriff was not in compliance with the statute, because not verified by claimant."

The correctness of the ruling on the motion for nonsuit is challenged here.

We believe that the judgment must be affirmed, on the ground, as stated in the motion for nonsuit, that the receiver had no capacity to sue in the court below.

Since the decision of the Supreme Court in Booth v. Clark (1854) 17 How. 322, 15 L. Ed. 164, the rule has been recognized that, in the absence of title in a receiver, either by conveyance or by statute, he will not be permitted to sue in a foreign jurisdiction, either as a matter of right or as a matter of comity. "The reason of the rule is that the legal title to the property is not in the receiver. All the rights in the property which the receiver has are by reason of the sovereign power through the courts taking custody of the property and making the receiver the representative of this sovereign power. This sovereign power does not extend beyond the confines of the state in which the receiver is appointed." Clark on Receivers (2d Ed.) vol. 1, § 591 (d).

In Lion Bonding Co. v. Karatz (1923)

262 U. S. 77, 87, 43 S. Ct. 480, 484, 67 L. Ed. 871, the Supreme Court said: "As Minnesota receivers merely, Hertz and Levin had no rights whatever in Nebraska. The general rule that a receiver cannot sue in a foreign jurisdiction applied. Great Western Mining Co. v. Harris, 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163. The express authorization (contained in the order of appointment) to apply for aid to other courts could not aid them in this respect. Sterrett v. Second National Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135."

In Sterrett v. Second National Bank, 248 U. S. 73, 76, 39 S. Ct. 27, 28, 63 L. Ed. 135, it was said:

"The question presented for our consideration is whether the receiver appointed in the [Alabama] chancery court is authorized to sue in the federal court for the recovery of such property.

"Since the decision of this court in Booth v. Clark, 17 How. 322, 15 L. Ed. 164, it is the settled doctrine in federal jurisprudence that a chancery receiver has no authority to sue in the courts of a foreign jurisdiction to recover demands or property therein situated. The functions and authority of such receiver are confined to the jurisdiction in which he was appointed. The reasons for this rule were fully discussed in Booth v. Clark and have been reiterated in later decisions of this court. Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Great Western Mining & Mfg. Co. v. Harris, 198 U. S. 561, 575, 577, 25 S. Ct. 770, 49 L. Ed. 1163; Keatley v. Furey, 226 U. S. 399, 403, 33 S. Ct. 121, 57 L. Ed. 273. This practice has become general in the courts of the United States, and is a system well understood and followed. It permits an application for an ancillary receivership in a foreign jurisdiction where the local assets may be recovered and, if necessary, administered. The system established in Booth v. Clark has become the settled law of the federal courts, and, if the powers of chancery receivers are to be enlarged in such wise as to give them authority to sue beyond the jurisdiction of the appointing court, such extension of authority must come from legislation and not from judicial action. Great Western Mining & Mfg. Co. v. Harris, supra, 198 U. S. page 577, 25 S. Ct. 770, 49 L. Ed. 1163."

It is not contended that the receiver has title to the property either by virtue of his appointment or by force of local statute, but simply that he was thereby vested with "authority and dominion over the property."

Granting the soundness of the contention that the receiver was entitled to the undisturbed possession of the property and assuming that he actually had such possession, and granting or assuming that he had the power to sue locally in replevin for an unlawful interference with his right of possession, nevertheless such right of possession did not vest him with the title necessary to sue in the court below without an ancillary appointment therein; and he was not entitled to bring the suit as a matter of comity. Great Western Mining Co. v. Harris, 198 U. S. 561, 576, 25 S. Ct. 770, 49 L. Ed. 1163.

Appellant contends that certain decisions of this court, notably The Willamette Valley, 66 F. 565, and Lewis v. Clark, 129 F. 570, uphold the right of a receiver of a state court to sue in a foreign jurisdiction. We think those decisions are in harmony with the decisions of the Supreme Court, and that they do not hold that a receiver may sue in the courts of a foreign jurisdiction in cases like the one before us. Undoubtedly, there are cases that support appellant's position, but they are in conflict with the rule as enunciated by the Supreme Court; and it is needless to say we must follow the decisions of that court.

In view of what has been said, it becomes unnecessary to discuss the other assignments of error.

The judgment is affirmed.