## STUCKERT v. ALEXANDER.

### No. 1226.

District Court, W. D. Oklahoma.
May 3, 1933.

McComb & McComb, of Oklahoma City, Okl., and Ernest May, of Fort Worth, Tex., for plaintiff.

Taft & Taft, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

The plaintiff in this action was appointed receiver by the district court of Tarrant county, Ninety-Sixth judicial district of Texas, and the order appointing him as receiver is as follows:

"The State of Texas v. Northwest Texas Building and Loan Association.

"No. 89166.

"In the District Court of Tarrant County, Ninety-Sixth Judicial District of Texas.

"On this 31st day of December, 1931, came on to be heard the petition of the plaintiff, State of Texas, to revoke the charter of the defendant, Northwest Texas Building & Loan Association. The Court having heard the pleadings and the evidence is of the opinion that the law is with the plaintiff, and that such charter should be revoked.

"It is therefore ordered, adjudged and decreed by the Court that the corporate charter of the defendant, Northwest Texas Building & Loan Association, issued by the State of Texas, on or about the 29th day of June, 1928, be, and the same is hereby revoked and forfeited, and the corporate existence of said Northwest Texas Building & Loan Association is hereby terminated.

"It is further ordered, adjudged and decreed by the Court that title to all properties of said defendant be and is hereby vested in J. L. Stuckert, Receiver, under appointment by this Court of date December 23d, 1930, and his successors as such receiver, for the purpose of liquidation and winding up of the affairs of said Building & Loan Association, and that such liquidation shall be continued under the supervision and administration of this Court, and for such purpose only this case shall be kept open, pending the further orders of this Court.

"[Signed] H. S. Lattimore, Judge."

The receiver brings this action in this court alleging in substance that the defendant is a resident of the Western district of the state of Oklahoma, living in Oklahoma City; that the defendant, while the Northwest Texas Building & Loan Association was in an insolvent condition, withdrew $4,000 from said association in payment for stock of the par value of $4,000; that this was in violation of the laws of the state of Texas.

Defendant answers admitting that he drew $2,000, denies that he drew the sum of $4,000 from said association, but denies that he had any knowledge at any time that said building and loan association was in an insolvent condition, prior to the appointment of a receiver.

The defendant, at the time of the trial, questions the jurisdiction of the court for the reason that the plaintiff is a mere chancery receiver and that his powers and duties are limited to the jurisdiction of the court which appointed him, and that he has no power to bring this action in this court, a foreign jurisdiction to the state of Texas.

The evidence discloses that the defendant is a resident of Oklahoma City, did buy $4,000 worth of stock as a result of an advertisement in some newspaper, and that later, as his needs required, he withdrew $2,000 by surrendering $2,000 worth of stock; that he knew nothing of the affairs of the Northwest Texas Building & Loan Association of Fort Worth, Tex.; that he attended no meetings, had no knowledge that he was ever elected a director and had no knowledge of the internal affairs of the association, believing at all times that said association was a going concern and was entirely solvent.

There are two questions presented: First, has this court jurisdiction; and, second, if so, is the plaintiff entitled to recover the amount sued for?

The court will consider first the question of jurisdiction. The Revised Civil Statutes of Texas 1925, provide as follows:

"Art. 2293. Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases: * * *

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights.

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity.

"Art. 2297. *Receivers' power.*—The receiver shall have power, under the control of the court, to bring and defend actions in his own name as receiver, to take charge and keep possession of the property, to receive rents, collect, compound for, compromise demands, make transfers, and generally to do such acts

respecting the property as the court may authorize.

"Art. 2319. In all matters relating to the appointment of receivers, and to their powers, duties and liabilities, and to the powers of the court in relation thereto, the rules of equity shall govern whenever the same are not inconsistent with any provision of this chapter and the general laws of the State."

It is admitted by counsel that the receiver would have only such powers as are granted a receiver by the state statute. Do the sections of the statute above quoted vest the receiver with the title to the property involved in the receivership? This matter has been answered by the highest court of Texas, in Cocke v. Wright (Tex. Com. App.) 39 S.W. (2d) 590, 592:

"The partnership being insolvent, and no longer in existence, except for the purpose of winding up its affairs, it was the duty of the receiver, under the orders of the court, to collect from those who owed it, the full amounts of their respective debts, and after paying the expenses of the receivership proceedings to distribute the remainder among the partners. * * *

"When the receiver was appointed and had qualified, this had the effect to put the property of the partnership in custodia legis. Texas Trunk Ry. Co. v. Lewis, 81 Tex. 8, 16 S.W. 647, 26 Am. St. Rep. 776. The receiver is a mere agent of the court wherein the receivership proceedings are pending. * * *"

In the case of Durham v. Scrivener (Tex. Civ. App.) 259 S. W. 606, 611, the Texas court says: "A receiver has no title, but only temporary possession, and so long as it is not proposed to interfere with such possession, another court of competent jurisdiction may proceed in the same manner as if no such receiver had been appointed. * * *"

The Texas statutes also further provide, in article 1389: "The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs. In case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the court so long as in its discretion it is necessary to suitably settle the affairs of such corporation."

In Sterrett v. Second National Bank (C. C. A.) 246 F. 753, 754, 3 A. L. R. 256, the court says: "It is the settled rule that a mere chancery receiver is but an officer of the court appointing him, and that in the absence of some conveyance or statute vesting in him title to the debtor's property he cannot sue in the courts of a foreign jurisdiction for its recovery upon the mere order of the appointing court, or without other authority than that arising from his appointment as receiver."

The case just quoted involves the construction of the statutes of Alabama, and the court, after quoting from the statutes of Alabama on insolvent corporations and appointment and powers of receivers, states: "It will be seen that these statutes do not expressly confer title upon the receiver; that they, at least at first view, suggest generally a court direction and control—an ordinary chancery receivership. * * *"

The Sterrett Case was carried to the Supreme Court of the United States, and that court in 248 U. S. 73, 39 S. Ct. 27, 28, 63 L. Ed. 135, says:

"The question presented for our consideration is whether the receiver appointed in the chancery court is authorized to sue in the federal court for the recovery of such property.

"Since the decision of this court in Booth. v. Clark, 17 How. 322, 15 L. Ed. 164, it is the settled doctrine in federal jurisprudence that a chancery receiver has no authority to sue in the courts of a foreign jurisdiction to recover demands or property therein situated. The functions and authority of such receiver are confined to the jurisdiction in which he was appointed. * * *"—citing Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Great Western Mining Company v. Harris, 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163; Keatley v. Furey, 226 U. S. 399, 33 S. Ct. 121, 57 L. Ed. 273.

The court further says: "This practice has become general in the courts of the United States, and is a system well understood and followed. It permits an application for an ancillary receivership in a foreign jurisdiction where the local assets may be recovered; and, if necessary, administered. The system established in Booth v. Clark has become the settled law of the federal courts, and, if the powers of chancery receivers are to be enlarged in such wise as to give them authority to sue beyond the jurisdiction of the appointing court, such extension of authority must come from legislation and not from judicial action."

In Lion Bonding & Surety Company v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 484, 67 L. Ed. 871, in a certiorari proceeding to the Eighth Circuit, the Supreme Court says: "The general rule that a receiver cannot sue-

in a foreign jurisdiction applied"—citing Great Western Mining Company v. Harris, 198 U. S. 562, 25 S. Ct. 770, 49 L. Ed. 1163, and Sterrett v. Second National Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135.

There are many other opinions by the Supreme Court of the United States sustaining the rule as announced in Booth v. Clark. The court has examined the order appointing the receiver, and in his opinion there is nothing in this order which makes of this receiver anything other than a mere chancery receiver. His duties are defined therein, and he is at all times in the performance of those duties subject to the order of the court.

The court is of the opinion that the plaintiff has no legal authority to institute or maintain this action in this court and that therefore the court is without jurisdiction.

However, the appellate court might hold otherwise, and, since the court has heard the evidence in this case, the second question can be passed upon so that the appellate court in any instance can render a final judgment.

The evidence in this case disclosed that the defendant, Alexander, lives in Oklahoma City; that he saw in a newspaper that certain stock could be purchased in the Northwest Texas Building & Loan Association, earning 8 per cent. dividends; that by correspondence in August, 1929, and immediately thereafter, he purchased $4,000 worth of the stock and the following year withdrew $2,000, leaving $2,000 of his investment in the company.

It is the contention of the defendant that, since only $2,000 is involved, the court is without jurisdiction for the reason that the amount is not $3,000 or more, but the bill alleges that the defendant withdrew $4,000, and the jurisdictional amount would be determined by the allegations of the petition rather than the amount which the plaintiff would be entitled to recover. Home Life Insurance Company v. Sipp (C. C. A.) 11 F.(2d) 474, Hampton Stave Company v. Gardner (8th C. C. A.) 154 F. 805.

On the merits of the controversy, the evidence clearly shows that, notwithstanding the facts that the minutes and records of the association disclosed that the defendant, Alexander, had been elected as director, no notice of said election was ever received by the defendant, and he had no knowledge that he had ever been elected director, and that the purported election was without his consent. He never had anything to do with the business, and was simply a purchaser of stock, living in another state.

It is very earnestly contended by the plaintiff that, since the association was insolvent at the time that the $2,000 was paid to the defendant, the company therefore should recover. The court does not agree with this contention. There is nothing in this evidence that indicates bad faith on the part of the defendant. In other words, he was merely another "sucker." He thought he was buying something when he did not, but he never had any knowledge of the condition of the association except from the officers of said association; he relied entirely upon their representations as to their condition, and, since the defendant has acted in good faith throughout and the association has acted in bad faith and was perhaps insolvent at the time that the stock was actually sold to this defendant and the $2,000 that was repaid to him was paid in the hope that his influence would be valuable to the association, that the association itself is certainly not entitled to take advantage of a situation created by itself, and in that respect the receiver stands in the shoes of the association.

Therefore, on the merits of the case, the court is of the opinion that the plaintiff should not recover, and that judgment should be rendered for the defendant. The costs are taxed to the plaintiff and under the first proposition the case is dismissed for want of jurisdiction.